GROSS v GENERAL MOTORS CORPORATION

McLAIN v GENERAL MOTORS CORPORATION

Docket Nos. 98045, 98046, 98806. Argued October 5, 1994 (Calendar Nos. 9-10). Decided March 8, 1995.

Wilson Gross brought an action in the Wayne Circuit Court against General Motors Corporation, alleging that a defective design of the roof and the restraint system of a 1984 Chevrolet CK pickup truck caused him to be seriously injured when it overturned. The court, Susan D. Borman, J., granted the defendant's motion for change of venue for venue improperly laid because no design work occurred in Wayne County, transferring the case to Washtenaw County, the site of the accident. Thereafter, the plaintiff moved for a change of venue for the convenience of the parties in the Washtenaw Circuit Court. The court, Donald Shelton, J., granted the plaintiff's motion and transferred the case to where the moving party resided, Wayne County. The Court of Appeals, SHEPHERD and FITZGERALD, JJ. (GRIFFIN, P.J., concurring in part and dissenting in part), while retaining jurisdiction, reversed the venue transfer by the Washtenaw Circuit Court and returned the case to the Wayne Circuit Court to reconsider the defendant's original motion for change of venue in light of *Lorencz v Ford Motor Co,* 439 Mich 370 (1992) (Docket Nos. 132648, 134197). On reconsideration, the court determined that venue was proper in Wayne County. The Court of Appeals, SHEPHERD and FITZGERALD, JJ. (GRIFFIN, P.J., dissenting), in an unpublished order, peremptorily affirmed the denial of the defendant's motion for change of venue. The defendant appeals.

Sharyn A. McLain brought an action in the Wayne Circuit Court against General Motors Corporation and others, alleging that a defective fuel system of the 1987 Chevrolet S-10 Blazer contributed to the death of Dawn McLain-Sutherland when it collided with a tractor-trailer in Oakland County. The court, John H. Hausner, J., granted the defendant's motion for change of

REFERENCES

Am Jur 2d, Venue § 37.

Place where claim or cause of action "arose" under state venue statute. 53 ALR4th 1104.

venue, transferring the case to Oakland County. The Court of Appeals, WAHLS, P.J., and GRIBBS and REILLY, JJ., in an unpublished order, denied leave to appeal (Docket No. 170235). The plaintiff appeals.

In an opinion by Chief Justice BRICKLEY, joined by Justices RILEY and MALLETT, the Supreme Court *held:*

Under MCL 600.1629; MSA 27A.1629, venue in a tort action is proper only at the situs of an injury, or in the place or places where the breach of a legal duty occurs that subsequently causes a person to suffer damages. Tangential damages that occur other than at such places are irrelevant to venue determination.

1. *Lorencz v Ford Motor Co* held that under MCL 600.1629(1); MSA 27A.1629(1) venue is proper where part or all of a cause of action arises, not merely at the situs of the injury. While the places of design and manufacture are additional locations from which a cause of action may arise, the place of approval of a particular design concept has little to do with the place of its actual design. What makes a design defect actionable is not its approval, but its tangible design. Thus, the county that is most tangibly related to an alleged defect in design is the location where a design defect cause of action arises. In these cases, that location was Macomb County, where General Motors Warren Technical Center is located and where the subject vehicles were designed.

2. Establishing the place where a plaintiff experiences pain and suffering as a proper place for venue would make MCL 600.1629(1)(c); MSA 27A.1629(1)(c) a venue provision of first priority, rather than being subordinate to subsections a and b. *Lorencz,* in discussing, in dicta, such a place as proper, overstated the limits of tort venue. Rather, under MCL 600.1629; MSA 27A.1629, venue is proper only at the situs of injury or in the place or places where the breach of a legal duty occurs that subsequently causes a person to suffer damages. Tangential damages that occur other than at such places are irrelevant to venue determination.

Justice BOYLE, concurring in part and dissenting in part, stated that when the product designer and the product manufacturer are the same entity, a cause of action for an alleged design defect arises for venue purposes either in the county in which the injury occurs, or in the county in which the product enters the stream of commerce or is purchased by the injured consumer.

Venue for a tort claim may be proper in multiple counties. Primary venue for tort claims lies in a county in which all or

part of a cause of action arose and in which the defendant resides, has a place of business, conducts business, or has a registered office. The first step in determining where venue is proper is to identify the elements of the particular cause of action and where each arose.

A design defect cause of action is not a separate or unique theory of recovery, but simply a particular type of negligence action. A negligence cause of action has four elements. To prevail, a plaintiff must prove the existence of a legal duty by the defendant to the plaintiff, the breach of the duty, the proximate causal relation between the breach and an injury to the plaintiff, and damages. Because there is no free-standing duty not to design a defective product, no part of a cause of action for defective design occurs in the county where a product is designed. The duty arises and is breached no earlier than when the defective design becomes a defective product in the stream of commerce.

The proximate cause of the injury and the injury itself can only arise in the county in which the product causes harm. Determining that the designer/manufacturer breaches its duty in the county in which the product is sold or received by the injured party not only comports with the general concepts of negligence-based products liability, but decreases vexatious discovery litigation and fulfills the principles underlying the venue statute.

Determining which county is most tangibly related to the alleged defect in design introduces complexity into design defect litigation. Proper venue must be established before extensive discovery has taken place. The choice of venue must be based on fact, not speculation. Determining which county. is most tangibly related to the design of the product may well depend on evidence plaintiffs do not have access to when the action is filed. Plaintiffs, however, can establish with relative ease where the product entered the stream of commerce or where the product was purchased by plaintiff. The defendant should bear the burden of establishing a more convenient forum in an alleged design defect case because it is in complete control of the data necessary to establish a more appropriate county.

Justice LEVIN, dissenting, stated that although a part of these causes of action for product design failure did not arise, for venue purposes, in Wayne County, further discovery may show that the ultimate design decision was made in Detroit. Thus, both cases should be remanded for additional discovery and fact finding regarding the role of General Motors Product

Policy Group and executive management in the design decisions concerning the vehicles. Although the design and alternative designs may have been formulated and developed in Warren, the ultimate decision may have been made in Detroit.

Ordinarily venue decisions are reached without extensive discovery, and there are advantages to bright-line rules. However, bringing this venue war to a conclusion, as desirable as closure would be, is not justified without providing the plaintiffs an opportunity for complete discovery and development of the facts and further fact finding by a circuit judge concerning General Motors' actual design decision-making process. The record is not sufficiently developed for the Supreme Court to rule, as a matter of law, that design decisions invariably occurred in Macomb County.

Justices CAVANAGH and WEAVER took no part in the decision of these cases.

*Gross,* reversed and remanded.

*McLain,* remanded.

VENUE — TORTS — DESIGN DEFECTS.

Venue in a tort action is proper only at the situs of an injury, or in the place or places where the breach of a legal duty occurs that subsequently causes a person to suffer damages; tangential damages that occur other than at such places are irrelevant to venue determination (MCL 600.1629; MSA 27A.1629).

*Goodman, Lister & Peters, P.C.* (by *Richard M. Goodman* and *Darrel Peters*); *Bendure & Thomas,* of counsel (by *Mark R. Bendure*), for plaintiff Gross.

*Chambers, Steiner* (by *Angela J. Nicita, Courtney E. Morgan, Jr.,* and *Jeffrey T. Meyers*) for plaintiff McLain.

*Reynolds, Beeby & Magnuson, P.C.* (by *Frank K. Mandlebaum* and *Michael C. McKinnon*), and *Frank Nizio* for defendant General Motors Corporation in *Gross.*

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Mark Shreve* and *Mark C. Smiley*), for defendants-appellees Noran Transportation, Inc.,

Noran Leasing, Inc., and Leonard Martin in *Mc-Lain*.

*Feeney, Kellett & Wienner, P.C.* (by *James P. Feeney, Peter M. Kellett*, and *David N. Goltz*), for defendant-appellee General Motors Corporation in *McLain*.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Michael L. Updike*) for defendants-appellees American Marine Shore Control and Mini in *McLain*.

Amicus Curiae:

*Mark Granzotto* and *Monica Farris Linkner* for Michigan Trial Lawyers Association.

BRICKLEY, C.J. These cases present two issues for discussion. The first issue is whether the county in which executives may have approved product designs provides venue in a design defect case. We hold that it does not. The second issue is whether a plaintiff's experience of damages within a county properly establishes tort venue therein. We hold that it does not.

I

These consolidated appeals concern two accidents involving General Motors vehicles. The facts concerning the accidents are not in dispute. Wilson Gross was seriously injured when his 1984 Chevrolet CK pickup truck overturned in Washtenaw County. Dawn McLain-Sutherland was killed when her 1987 Chevrolet S-10 Blazer collided with a tractor-trailer on M-59 in Oakland County. As a consequence of these accidents, design defect suits were brought against General Motors. Plaintiffs in

each case brought suit in Wayne County, the location of the world headquarters of General Motors Corporation. Defendants subsequently challenged venue in each of these cases as improper, arguing that no design work occurred in Wayne County. No one disputes that venue is proper in Macomb County, the site of the actual design work for both vehicles.

The procedural histories of these cases are more complicated, especially *Gross v General Motors*. In summary, plaintiff Gross filed suit in Wayne County. Pursuant to MCL 600.1651; MSA 27A.1651 and MCR 2.223, defendant moved for a change of venue for venue improperly laid. The Wayne Circuit Court granted the motion and transferred the case to Washtenaw· County, the site of the plaintiff's accident, whereupon Gross, pursuant to MCL 600.1629(2); MSA 27A.1629(2), and MCR 2.222, moved in Washtenaw County for a change of venue for the convenience of the parties. The Washtenaw Circuit Court granted the motion and, as required by MCL 600.1629(2); MSA 27A.1629(2), transferred the case to the residence of the moving party, Wayne County.

The parties appealed in the Court of Appeals, which reversed the venue transfer of the Washtenaw Circuit Court, and, retaining jurisdiction, returned the case to the Wayne Circuit Court for reconsideration of defendant's original motion for change of venue in light of this Court's decision in *Lorencz v Ford Motor Co,* 439 Mich 370; 483 NW2d 844 (1992). On reconsideration, the Wayne Circuit Court determined that venue was proper in Wayne County. The Court of Appeals then peremptorily affirmed the denial of defendant's motion for change of venue. Defendant subsequently appealed to this Court.

Plaintiff McLain also filed suit in Wayne

County. Pursuant to MCL 600.1651; MSA 27A.1651 and MCR 2.223, defendant moved for a change of venue for venue improperly laid. The Wayne Circuit Court granted the motion, transferring the case to Oakland County, and denied plaintiff's motion for reconsideration.[1] Plaintiff appealed in the Court of Appeals, but was denied leave. Plaintiff then appealed to this Court.

II

We are asked in these cases to further construe the meaning of MCL 600.1629(1); MSA 27A.1629(1).[2] In *Lorencz, supra,* we were con-

---

[1] The Wayne Circuit Court denied the motion pursuant to *Saba v Gray,* 111 Mich App 304; 314 NW2d 597 (1981). Plaintiff McLain argues on appeal that venue is not jurisdictional, and therefore a trial court should be able to entertain a motion for reconsideration of its order changing venue. In view of the fact that the propriety of venue in Wayne County is now before us, this meritorious issue is rendered moot and not addressed.

[2] MCL 600.1629(1); MSA 27A.1629(1) provides:

Subject to subsection (2), in an action based on tort, the following provisions apply:

(a) A county in which all or a part of the cause of action arose and in which either of the following apply is a proper county in which to commence and try the action:

(i) The defendant resides, has a place of business, or conducts business in that county.

(ii) The registered office of a defendant corporation is located in that county.

(b) If no county satisfies the criteria under subdivision (a), a county in which all or part of the cause of action arose and in which either of the following apply is a proper county in which to commence and try the action:

(i) The plaintiff resides, has a place of business, or conducts business in that county.

(ii) The registered office of a plaintiff corporation is located in that county.

(c) If no county satisfies the criteria under subdivision (a) or (b), a county in which both of the following apply is a proper county in which to commence and try the action:

(i) The plaintiff resides, has a place of business, or conducts business in that county, or the registered office of a plaintiff corporation is located in that county.

fronted with the question whether this statute limited venue for tort actions to the county in which the tort occurred. We concluded that it does not, that "venue is proper where part or all of the cause of action arose, not merely at the situs of the injury." *Id.* at 377. We stated:

It is clear that a breach of duty can occur in a different venue than the injury in a tort case. For example, in a products liability action, the product can be designed in one county, manufactured in another, and the injury may occur in yet a third. A plaintiff, alleging proper facts, can file suit in any one of these places because all or a part of the cause of action arose in any one of them. Under the plain language of MCL 600.1629(1)(a); MSA 27A.1629(1)(a), venue would be properly laid in any one of them. [*Id.* at 375. Citations omitted.]

In accordance with *Lorencz,* the parties to these design defect actions do not dispute that the county in which a product is designed is a proper place for venue. However, they disagree with regard to the meaning of the term "design" and accordingly with regard to the place or places where the subject vehicles were designed.

Defendants argue that the subject vehicles were designed at General Motors Warren Technical Center in Macomb County. Plaintiffs counter that the subject vehicles were designed in Macomb and Wayne Counties. They contend that in addition to the actual design work performed at the Tech Center, decisions that affected product design were

(ii) The defendant resides, has a place of business, or conducts business in that county, or the registered office of a defendant corporation is located in that county.

(d) If no county satisfies the criteria under subdivision (a), (b), or (c), a county which satisfies the criteria under section 1621 or 1627 is a proper county in which to commence and try an action.

made at General Motors' world headquarters in Detroit. McLain asserts that General Motors' product policy group, the executive management committee of the corporation, met at General Motors' world headquarters in Detroit "to discuss, adopt and approve funding" for development of a throttle body injection system. McLain alleges that these decisions resulted in the production and marketing of a defective fuel system. Gross similarly argues that General Motors' executives made financial and other decisions that shaped or conditioned the design of the roof and restraint systems of the CK pickup. In short, General Motors' executives are said to have made "ultimate design decisions" in the corporation's Detroit offices that thereby provide venue in Wayne County.

A

Venue rules traditionally have served to ensure that proceedings are held in the most convenient forum. *Peplinski v Employment Security Comm,* 359 Mich 665, 668; 103 NW2d 454 (1960). *Neirbo Co v Bethlehem Shipbuilding Corp,* 308 US 165, 168; 60 S Ct 153; 84 L Ed 167 (1939); 15 Wright, Miller & Cooper, Federal Practice & Procedure, § 3801, p 4. Courts evaluate convenience primarily in terms of the interests of the parties and any relevant witnesses. However, the primary goal is to minimize the costs of litigation not only by reducing the burdens on the parties, but also by considering the strains on the system as a whole. See *Piper Aircraft Co v Reyno,* 454 US 235, 256-257; 102 S Ct 252; 70 L Ed 2d 419 (1981); *Gulf Oil Corp v Gilbert,* 330 US 501, 507-509; 67 S Ct 839; 91 L Ed 1055 (1947).

In Michigan, plaintiffs carry the burden of establishing the propriety of their venue choice, and the

resolution of a venue dispute generally occurs before meaningful discovery has occurred. *Marsh v Walter L Couse & Co,* 179 Mich App 204, 208; 445 NW2d 204 (1989). This arrangement usually works well. Ordinarily, the underlying facts relevant to the venue issue are not seriously in dispute. In such circumstances, the trial court is in a good position to resolve a dispute without extensive discovery.

The venue issues presented in these appeals, however, are different. The parties have argued contentiously regarding the facts surrounding the design of the subject vehicles. They have sought significant discovery and presented complicated factual issues for the trial court to resolve in determining proper venue. Greater discovery for the purposes of venue determination would help remedy this problem, but this would further burden trial courts with "venue trials."

In resolving these disputes, we approach our task bearing in mind that venue is simply the location of trial, and its determination should only concern the selection of a fair and convenient location where the merits of a dispute can be adjudicated. *Rogoski v Streeter,* 364 Mich 115, 119; 110 NW2d 617 (1961); *Peplinski, supra* at 668. Battles over venue that endure for years and are a great expense should be discouraged and avoided when there are convenient and fair locations for trial that fulfill the venue requirements of Michigan statutes and court rules.

B

In *Lorencz,* we concluded that MCL 600.1629; MSA 27A.1629 clearly and unambiguously provides that venue is appropriate in all places where

a cause of action or a part thereof arises.[3] However, while *Lorencz* makes clear that the places of design and manufacture are additional locations from which a cause of action may arise, neither it nor MCL 600.1629; MSA 27A.1629 specifies what it means to "design" or "manufacture" a product. Therefore, unlike *Lorencz,* in which there was no ambiguity regarding the application of the statute, we must turn to the intent and purposes of the Legislature in establishing this statute to facilitate its interpretation and application. *Moore v Dep't of Military Affairs,* 398 Mich 324, 328; 247 NW2d 801 (1976); *King v Director of Midland Co Dep't of Social Services,* 73 Mich App 253, 258; 251 NW2d 270 (1977).

In 1986, the Michigan Legislature passed the tort reform act[4] and in so doing modified Michigan's venue statutes for tort proceedings. One of the Legislature's remedial goals was to limit venue shopping by plaintiffs. In its report to the Legislature, the House Special Committee on Liability Insurance[5] specifically identified the problem of

---

[3] Relying on extensive legislative history, defendant argued that the statutory phrase "[a] county in which all or a part of the cause of action arose" only *refers to the county or counties in which all or part of the plaintiffs' injuries or damages occurred.* In rejecting this analysis, we stated:

> When a statute is clear and unambiguous, judicial construction or interpretation is unnecessary and therefore, precluded. However, if construction is necessary, the Court is required to determine and give effect to the Legislature's intent and employ the ordinary and generally accepted meaning of the words used by the Legislature. . . . Our reading of the statute, MCL 600.1629(1)(a); MSA 27A.1629(1)(a), "[a] county in which all or a part of the cause of action arose," leads us to conclude that it is unambiguous and needs no judicial interpretation. Under the statute, venue is proper where part or all of the cause of action arose, not merely at the situs of the injury. [*Lorencz, supra* at 376-377.]

[4] The "tort reform act" is an umbrella term used to describe three distinct pieces of legislation: 1986 PA 175, 176, and 178.

[5] The House of Representatives established the Special Committee

cases having "only a marginal relationship to Wayne County" being filed there because attorneys believed they might obtain larger jury verdicts from Wayne County juries.[6]

The former tort venue statute, MCL 600.1627; MSA 27A.1627, allowed a plaintiff to file a tort claim in the "county in which all or a part of the cause of action arose . . . ." The first draft of the new legislation, HB 5150, eliminated this language and made the site of injury the priority location for venue.[7] This version of the bill was rejected by the House. Ultimately, the House and Senate passed HB 5154, which returned the "in which all or a part of the cause of action arose" language of MCL 600.1627; MSA 27A.1627. This bill was signed by the Governor and became MCL 600.1629; MSA 27A.1629.

As stated above, the primary rule of statutory construction is to determine and effectuate the intent of the Legislature through reasonable con-

_____

on Liability Insurance in the fall of 1985. This committee was instructed to study the various problems confronting the insurance industry and was to propose remedies to address those problems. The Special Committee convened extensive hearings and proposed several remedial measures to address problems relating to tort reform. One of these proposed measures was a bill to revise tort venue. This proposed bill was eventually submitted to the House Judiciary Committee (report of House Special Committee on Liability Insurance to the state Legislature [October 31, 1985]) and, on November 5, 1985, this bill, HB 5150, was introduced in the House of Representatives. See FitzGerald, *Attention venue shoppers: Choice of venue after Michigan tort reform,* 68 U Det L R 409, 417 (1991).

[6] Report of House Special Committee on Liability Insurance to House and Senate members (October 31, 1985).

[7] HB 5150 (November 5, 1985) provided:

In a tort action, venue shall be determined in the following order of priority:
(A) The county in which all or a part of the injury occurred.
(B) The county in which a defendant resides.
(C) If none of the defendants meets any of the criteria in subdivision (B), the county in which any plaintiff resides.

struction in consideration of the purpose of the statute and the object sought to be accomplished. *Moore, supra* at 328. The legislative history of MCL 600.1629; MSA 27A.1629 strongly suggests that the Legislature considered and rejected a tort venue statute strictly limiting venue to the place where the injury occurred. However, we do not interpret this decision to mean that the Legislature repudiated its overall desire to limit abusive forum shopping.

Under plaintiffs' interpretation of MCL 600.1629; MSA 27A.1629, any county in which corporate executives make decisions regarding product development could become proper venue. Such a rule could greatly intensify the problem of venue shopping. Telephone conferences could result in proper venue being established in counties with only the most remote connection to the actual design of a product.

In addition to promoting greater venue shopping, plaintiffs' proposed rule does violence to MCL 600.1629(1); MSA 27A.1629(1) as a whole. When construing a statute, the Court must give effect to every phrase, clause, and word as far as possible; one part of the statute should not be construed so as to render another part unnecessary. *People ex rel Wayne Co Prosecutor v Society of Good Neighbors,* 327 Mich 620, 626; 42 NW2d 761 (1950); *In re Harris Estate,* 151 Mich App 780, 785-786; 391 NW2d 487 (1986). If this Court were to accept the position of plaintiffs McLain and Gross, the county of a manufacturer's headquarters would always be the proper venue in a design defect cause of action, rendering MCL 600.1629(1)(b), (c); MSA 27A.1629(1)(b), (c) unnecessary and inconsequential. This is not what the Legislature had in mind. Consequently, plaintiffs' interpretation cannot be adopted.

Finally, in interpreting a statute, the meaning of the Legislature is to be found in the terms and arrangement of the statute without straining or refinement, and the expressions used are to be taken in their natural and ordinary sense. *People v Powell,* 280 Mich 699, 704; 274 NW 372 (1937); *Deloria v Atkins,* 158 Mich 232, 241-242; 122 NW 559 (1909). While undoubtedly corporate executives make decisions that establish the parameters within which design decisions are made, it cannot be forthrightly maintained that General Motors' executives designed the CK pickup or the S-10 Blazer any more than their approval of a new car model means that it was manufactured where it was approved. The approval of a particular design concept has little to do with the actual design. What makes a design defect actionable is not its approval, but its tangible design.

Certainly, there is no question that a manufacturer is accountable and liable for negligent decision making that causes injury to its customers, regardless of where these design decisions are made. However, what is at issue here is not liability, but venue. We hold that the county most tangibly related to an alleged defect in design is the location where a design defect cause of action arises. In *Gross v General Motors* and *McLain v General Motors,* that location was Macomb County, where General Motors Warren Technical Center is located.

III

Plaintiff Gross also argues that there is no need for this Court to reach the general issue of venue in design defect cases because the facts of his case provide an alternative and independent ground for

finding venue appropriate in Wayne County.[8] Cit-

[8] Gross and McLain also argue four other independent bases for establishing venue in Wayne County. None succeed. First, Gross argues pursuant to MCL 600.1641; MSA 27A.1641 that a codefendant of General Motors based in Wayne County properly establishes venue in Wayne County. MCL 600.1641; MSA 27A.1641 provides that when two separate claims are joined, a venue that is proper for either is proper for both. *Pietrangelo v Burns Clinic,* 179 Mich App 302, 305-306; 445 NW2d 194 (1989). However, while plaintiff amended his original complaint to include a Wayne County codefendant, it was subsequently determined that the statute of limitations had expired and barred any cause of action against that defendant. Moreover, this appeal is based on the Wayne Circuit Court's new venue assessment as ordered by the Court of Appeals, an event occurring long after codefendant's motion for summary judgment was granted.

Second, Gross argues that intervening-plaintiff Blue Cross and Blue Shield establishes proper venue in Wayne County. Blue Cross, a Wayne County corporation, has paid money damages on plaintiff's behalf to health care providers in Wayne County. He argues that these damage payments are the basis of Blue Cross' suit and therefore Blue Cross' cause of action arises in Wayne County under MCL 600.1629(1); MSA 27A.1629(1). Plaintiff then argues, again pursuant to MCL 600.1641; MSA 27A.1641, that because the Blue Cross suit properly arises in Wayne County, venue is proper in Wayne County with regard to all other plaintiffs joined in the suit. However, Blue Cross' cause of action is derived from and wholly dependent on primary-plaintiff Gross' cause of action. Any cause of action that can be maintained by Blue Cross is dependent on the same alleged wrongful acts as Gross' suit. It is irrelevant that Blue Cross made payments from its Wayne County offices to health care providers in Wayne County.

Third, Gross argues that the venue transfer of the Washtenaw Circuit Court for the convenience of the parties, ruled improper by the Court of Appeals, was a legitimate and permissible transfer. Like the Court of Appeals, we find this argument to be without merit. Moreover, plaintiff had several opportunities to appeal the Court of Appeals decision and failed to do so. Plaintiff could have appealed to this Court within twenty-one days of the issuance of that decision pursuant to MCR 7.302. Plaintiff also could have filed a cross appeal after defendant-appellant filed the present appeal, but did not. *Therrian v General Laboratories Inc,* 372 Mich 487, 490; 127 NW2d 319 (1964).

Finally, McLain argues that venue is proper in Wayne County because General Motors failed to order a recall upon receiving notice that the fuel system of the S-10 Blazer was defective and inherently dangerous. Plaintiff contends that the decision to recall a product or the failure to do so occurs at the highest echelons of a company. Because General Motors' executives are based in its world headquarters in Detroit, venue is allegedly proper pursuant to MCL 600.1629(1); MSA 27A.1629(1). This argument fails for two reasons. First, it is insufficiently briefed. In a brief that spans nearly twenty-

ing *Lorencz,* plaintiff argues that the place or
places where a plaintiff suffers damages is a place
where part of a tort action arises and is therefore
a proper place for venue. Because he has endured
pain and suffering in Wayne County, it is claimed
that venue lies in that county. For essentially the
same principles of statutory interpretation applied
above, we reject such a rule.

In *Lorencz,* we described the various locations
where a products liability suit might arise, specifi-
cally referring to the elements of such a cause of
action. We stated:

> In a cause of action arising from a tortious       .
> injury, there are four elements:
> " '1. The existence of a legal duty by defendant
> toward plaintiff;
> '2. the breach of such duty;
> '3. the proximate causal relation between the
> breach of such duty and an injury to the plaintiff;
> and
> '4. the plaintiff must have suffered *damages.' "*
> [*Id.* at 375. Citations omitted; emphasis added.]

We then concluded:

> It is clear that a breach of duty can occur in a

eight pages, the argument is presented in less than one page. More-
over, defendants have not briefed the question at all. Failure to
properly brief an issue on appeal constitutes abandonment of the
question. *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959);
*City of St Ignace v McFarlane,* 45 Mich App 81, 86; 206 NW2d 226
(1973). Second, and explaining defendants' failure to brief the issue,
plaintiff did not argue this theory below. When a cause of action is
presented for appellate review, a party is bound to the theory on
which the cause was prosecuted or defended in the court below.
*Dwelley v Tom McDonnell, Inc,* 334 Mich 229, 233; 54 NW2d 217
(1952). While McLain did plead a failure to recall theory, she did not
argue that theory in response to defendants' motion to change venue.
Moreover, when plaintiff moved for reconsideration of the trial court's
order to transfer venue, she relied exclusively on the design decisions
theory. It was only when plaintiff appealed in the Court of Appeals
that she argued the failure to recall theory.

different venue than the injury in a tort case. For example, in a products liability action, the product can be designed in one county, manufactured in another, and the injury may occur in yet a third. A plaintiff, alleging proper facts, can file suit in any one of these places because all or a part of the cause of action arose in any one of them. Under the plain language of MCL 600.1629(1)(a); MSA 27A.1629(1)(a), venue would be properly laid in any one of them. [*Id.* Citations omitted.]

Plaintiff states that because damages are an element of a tort action, they too must provide a place or places where a tort action arises. If this argument is accepted, the place or places where a person suffers any damages is a proper location for venue pursuant to MCL 600.1629; MSA 27A.1629.

In support of this argument, plaintiff cites *Witt v C J Barrymore's,* 195 Mich App 517; 491 NW2d 871 (1992). In *Witt,* the plaintiff was injured in a Toledo, Ohio, bar when an intoxicated customer assaulted and beat her. The plaintiff was from Monroe County, Michigan, and the defendant was a Michigan corporation based in Macomb County. In interpreting and applying MCL 600.1629(1)(a), (b); MSA 27A.1629(1)(a), (b), the Court of Appeals concluded pursuant to *Lorencz* that venue was proper in Monroe County because an element of the plaintiff's cause of action arose there, i.e., "[a] portion of plaintiff's claimed economic, noneconomic, and loss of consortium damages . . . ."[9] *Witt, supra* at 522.

---

[9] The Court of Appeals reasoned as follows:

In a cause of action arising from a tortious injury, the plaintiff must establish the defendant's legal duty to the plaintiff, the breach of that duty, proximate causation between the breach of duty and the injury, and resultant damages. Plaintiff's premises liability and dramshop claims appear to arise from duties owed in Ohio. Additionally, questions concerning breach of duty and proximate cause involve events that transpired in Ohio. Plaintiffs' damages arose either in Ohio or in Monroe County.

Such a reading of *Lorencz* is not illogical. While we did not explicitly provide that the location of damages suffered by the plaintiff is a proper site for venue, damages were explicitly listed as an element of a tort suit.[10] However, statutes must be construed to prevent absurd or illogical results and to give effect to their purposes. *Huron-Clinton Metropolitan Authority v Attorney General*, 146 Mich App 79, 85; 379 NW2d 474 (1985). An expansive application of plaintiff's proposed rule would open Pandora's box regarding forum shopping, permitting any potential plaintiff who merely receives some medical treatment or physical therapy in Wayne County or who moves into Wayne County after an accident to file suit there. As provided above, such a result is contrary to the intent of the Legislature in establishing MCL 600.1629(1); MSA 27A.1629(1).

Moreover, courts are bound to construe statutes so as to give them validity and a reasonable construction; seeming inconsistencies in the various provisions of a statute should be reconciled, if possible, so as to arrive at a meaning that gives effect to all parts of the statute. *People ex rel Wayne Co Prosecutor v Society of Good Neighbors,*

Under the controlling venue statute, venue is proper in Monroe County. . . . A portion of plaintiffs' claimed economic, noneconomic, and loss of consortium damages appear to have arisen in Monroe County. The lower court did not rule on venue in Monroe County, although defendant had posed it as an option. However, the lower court did not have the benefit of the *Lorencz* decision when it ruled. Accordingly, we remand for transfer of this case to Monroe County pursuant to MCL 600.1629(1)(b)(i); MSA 27A.1629(1)(b)(i). [*Witt, supra* at 521-522. Citations omitted.]

[10] It is noteworthy that in our specific discussion of where a products liability action may arise (see quoted language above, pp 162-163), we did not include the location of damages. This was not an accidental omission.

*supra* at 626; *In re Harris Estate, supra* at 785-786. Establishing the place where a plaintiff experiences pain and suffering as a proper place for venue has the effect of making MCL 600.1629(1)(c); MSA 27A.1629(1)(c) a venue provision of first priority, i.e., elevates the provisions of MCL 600.1629(1)(c); MSA 27A.1629(1)(c) to equal footing with MCL 600.1629(1)(a); MSA 27A.1629(1)(a) and above MCL 600.1629(1)(b); MSA 27A.1629(1)(b).

In our discussion of damages, in dicta, in *Lorencz,* we allowed an interpretation of MCL 600.1629; MSA 27A.1629 that overstates the limits of tort venue. We now clarify the role of damages in establishing tort venue. Under MCL 600.1629; MSA 27A.1629, venue in a tort action is proper only at the situs of an injury, or in the place or places where the breach of a legal duty occurs that subsequently causes a person to suffer damages. Tangential damages that occur other than at such places are irrelevant to venue determination.

IV

Accordingly, we reverse the decision of the Court of Appeals in *Gross v General Motors* and remand the case to Wayne County for further disposition consistent with this opinion. In *McLain v General Motors,* we remand the case to Oakland County for trial.

RILEY and MALLETT, JJ., concurred with BRICKLEY, C.J.

BOYLE, J. (*concurring in part and dissenting in part*). I agree with parts I and III of the majority opinion. I respectfully disagree, however, with the majority's adoption of the venue test for design defect cases. I would hold that a design defect

cause of action arises, thus rendering venue proper, in the county in which the injury occurs or in the county in which the product enters the stream of commerce or the consumer purchases the allegedly defective product. Although the majority's test commendably seeks a result that will minimize venue disputes, the means suggested will further protract discovery as attorneys seek the forum in which the likely factfinder is perceived to be most favorably disposed to their clients' interests.

Venue for a tort claim may be proper in multiple counties. *Lorencz v Ford Motor Co,* 439 Mich 370; 483 NW2d 844 (1992). Primary venue for tort claims lies in a county in which all or part of a cause of action arose and in which the defendant resides, has a place of business, conducts business, or has a registered office. MCL 600.1629(1)(a); MSA 27A.1629(1)(a). The legislative history surrounding § 1629 indicates that the initial goal was to "eliminate forum shopping and the filing of only tangentially related lawsuits in Wayne, Oakland, and Macomb counties." *Lorencz* at 373-374. While in *Lorencz* we recognized that the language the Legislature ultimately enacted failed to achieve this goal,[1] as the majority notes, resolution of this issue should be guided by the underlying purpose of the Legislature.

In *Lorencz,* the defendant argued that venue was only proper in the county in which the injury occurred because that was the only county in which the cause of action arose. We rejected this argument and held that "a cause of action may arise in more than one place, making venue proper in more than one jurisdiction . . . ." *Id.* at 377. To illustrate how a breach of duty could arise

[1] See *id.* at 374.

in a different jurisdiction than the injury, we discussed a products liability action as an example:

> [I]n a products liability action, the product can be designed in one county, manufactured in another, and the injury may occur in yet a third. A plaintiff, alleging proper facts, can file suit in any one of these places because all or part of the cause of action arose in any one of them. [*Id.* at 375.]

*Lorencz* involved two competing venues, Gratiot County, the place of the accident, and Wayne County. It was specifically claimed that venue was proper in Wayne County because "the car was defectively designed, manufactured, and assembled at Ford's Wayne County facilities." *Id.* at 372. *Lorencz* thus established only that a cause of action could arise in multiple counties. Venue is only proper in multiple counties, however, if all or part of the cause of action arose in different counties. Thus, the first step in determining where venue is proper is to identify the elements of the particular cause of action.

In Michigan, a manufacturer is liable for a defective design if the risk of harm occasioned by the design of the product outweighs the design's utility. *Prentis v Yale Mfg Co,* 421 Mich 670; 365 NW2d 176 (1984). The risk-utility analysis adopted in *Prentis* is a pure negligence cause of action. *Id.* at 691. A design defect cause of action is not a separate or unique theory of recovery, but simply a particular type of negligence action.

The majority's failure to identify the elements of a design defect cause of action leads to an improper focus on the perceived need to define "design." The majority concludes "that the county most tangibly related to an alleged defect in design is the location where a design defect cause of action arises." *Ante* at 160. This test is ambiguous

and unnecessary. When the design and the manufacture of a product occur in different places, there is no need to determine the county in which the product was designed.

The proper focus is identifying the elements of the cause of action and deciding where each of them arose. A negligence cause of action has four elements. To prevail, a plaintiff must prove "(1) [t]he existence of a legal duty by defendant toward plaintiff; (2) the breach of such duty; (3) the proximate causal relation between the breach of such duty and an injury to the plaintiff; and (4) the plaintiff must have suffered damages." *Lorencz, supra* at 375; *Roulo v Automobile Club of Michigan,* 386 Mich 324; 192 NW2d 237 (1971).

The elements of the design defect cause of action in this case can only arise in two possible counties. The duty, most easily stated in the negative, is not to provide a product if the product creates an "unreasonable risk of foreseeable injury." *Prentis* at 693; *Owens v Allis-Chalmers Corp,* 414 Mich 413, 425; 326 NW2d 372 (1982). That duty and its breach may arise in the county in which the product was manufactured or the county in which the product was placed into the stream of commerce. However, since there is no free-standing duty not to design a defective product, no part of a cause of action for defective design occurs in the county where a product is designed. To state it otherwise, a design is necessary to a products liability action, but it is not sufficient to all or any part of the cause of action.[2]

There is no liability in the abstract for negligently designing a product or even manufacturing

---

[2] It is possible to imagine a situation in which the design defect is the faulty design itself. Imagine that a defendant's business is selling plans for building go-carts to the general public. The hypothetical example does not detract from the point. Although the design itself is "the product," there is no breach of duty until it is offered for sale.

a negligently designed product. As noted by the Court of Appeals in *Gauthier v Mayo,* 77 Mich App 513, 515; 258 NW2d 748 (1977), "The underlying rationale of a product liability claim is that the manufacturer has a duty to place into the stream of commerce products free of defects and reasonably fit for the use intended, anticipated or reasonably foreseeable." The duty arises and is breached no earlier than when the defective design becomes a defective product in the stream of commerce.

The second county where venue is proper is the county in which the accident occurs. The proximate cause of the injury and the injury itself can only arise in the county in which the product causes harm.

The Restatement of Torts and the Model Uniform Products Liability Act (UPLA) reach the same conclusion, but through different analyses. Neither the Restatement or the UPLA consider an object a product until it is introduced into the stream of commerce. In order for an object to be considered a product under the Restatement, the object must be sold. Restatement Torts, 2d, § 402A, pp 347-348. Pursuant to the UPLA, the object must be produced for introduction into trade or commerce. UPLA, § 102(C). A product must be released in some manner to the consuming public or purchaser before it can be said to have entered the stream of commerce. *Thomas v St Joseph Hosp,* 618 SW2d 791 (Tex Civ App, 1981).

Determining that the designer/manufacturer breaches its duty in the county in which the product is sold or received by the injured party not only comports with the general concepts of negligence-based products liability, but decreases vexatious discovery litigation and fulfills the principles underlying the venue statute. As the majority

accurately notes, "Venue rules traditionally have served to ensure that proceedings are held in the most convenient forum." *Ante* at 155. The "goal is to minimize the costs of litigation not only by reducing the burdens on the parties, but also by considering the strains on the system as a whole." *Id.* However, determining which county is "most tangibly related to an alleged defect in design," *ante* at 160, introduces another complexity into design defect litigation. The additional inquiry is unrelated to the question whether the design was defective and places undue burdens on the parties and on the system.

While the majority attempts to discourage "[b]attles over venue that endure for years and are a great expense," *ante* at 156, its test will escalate the war and shift the battle's focus. Resources will be diverted from the complicated and often formidable task of unearthing evidence regarding a defendant's knowledge of the defective nature of the product. The fight will continue over which county is "most tangibly related" to the design defect, an inquiry that necessarily will trace the entire history of the decision-making process and will require subsidiary contests about whether a given action in that process was a "decision" or merely a recommendation and whether the question is to be resolved by an objective standard or a subjective standard. Indeed, the dissent has already suggested a predictable gloss on the test by alluding to "the most meaningful design decisions," *post* at 174. Discovery litigation and venue hearings will continue along the tortured path that has forestalled the trial of these cases.

Proper venue must be established before extensive discovery has taken place. The "plaintiff must determine which county is proper for venue purposes before the complaint is filed on the basis of

facts then known to him. . . . The choice of venue must be based on fact, not speculation." *Marsh v Walter L Couse & Co,* 179 Mich App 204, 208; 445 NW2d 204 (1989). If the defendant challenges the plaintiff's choice of venue, it is the plaintiff's burden to establish that the venue chosen is proper. *Johnson v Simonton,* 184 Mich App 186; 457 NW2d 129 (1990); *Marsh, supra* at 208. Determining which county is most tangibly related to the design of the product may well depend on evidence plaintiffs do not have access to when the action is filed. Plaintiffs, however, can establish with relative ease where the product entered the stream of commerce or where the product was purchased by plaintiff.

Generally, the county in which the plaintiff purchases a product is geographically closer to the plaintiff than the county in which the product was designed. Because "[v]enue is primarily a matter of convenience," *Peplinski v Employment Security Comm,* 359 Mich 665, 668; 103 NW2d 454 (1960), and equity, *Burlington N R Co v Ford,* 504 US 648, 651; 112 S Ct 2184; 119 L Ed 2d 432 (1992), a county that is in proximity to the plaintiff is a more appropriate forum. With regard to the defendant's interests, it is not inequitable to force the designer/manufacturer to defend a claim in such a county because a designer/manufacturer should expect to defend a lawsuit in any county in which its products enter the stream of commerce or are transferred within it.

The defendant's interests are further protected in that the plaintiff's venue selection is not absolute. If the defendant believes that another county is a more convenient forum, it can file a motion to transfer the action. MCR 2.222; MCL 600.1629(2); MSA 27A.1629(2). A more convenient county could be one in which the majority of the witnesses are

located or where the bulk of the evidence giving rise to the claim is located. The defendant should bear the burden of establishing a more convenient forum in an alleged design defect case because it is in complete control of the data necessary to establish a more appropriate county.

This dispute can be resolved without recourse to an ambiguous and unwieldy definition of "design." Accordingly, I would hold that when the product designer and the product manufacturer are the same entity, a cause of action for an alleged design defect arises for venue purposes either in the county in which the injury occurs, or in the county in which the product enters the stream of commerce or is purchased by the injured consumer. Accordingly, I would remand both cases to the trial court to determine the appropriate venue.

LEVIN, J. (*dissenting*). I agree with the majority that "a part" of the instant causes of action for product design failure did not arise, for venue purposes, in Wayne County on the rationale that the decision to manufacture and market products containing the alleged design defects was necessarily made in Detroit because the World Headquarters of General Motors is located in Detroit. Further discovery, however, may show that the ultimate design decision was made in Detroit.

General Motors contends that the vehicles were designed at its Warren Technical Center in Macomb County. McLain contends, with some evidence to support, that the design was approved by General Motors Product Policy Group, an executive management committee that met at the World Headquarters in Detroit. In *Gross,* discovery on the venue issue, although voluminous, may be incomplete, possibly because the circuit judge initially ruled for General Motors, and, on remand,

ultimately decided to retain jurisdiction on bases unrelated to where the vehicle was designed or the design decision was made.

I would remand both cases for additional discovery and fact finding regarding the role of the Product Policy Group and executive management in the design decisions concerning the vehicles. Although the design and alternative designs may have been formulated and developed in Warren, the ultimate decision may have been made in Detroit.

I recognize that ordinarily venue decisions are reached without extensive discovery, and that there are advantages to bright-line rules. In the instant cases, however, the parties appear to be willing to devote considerable resources to winning this venue war, which both sides appear to regard as worthy of that effort. We are not justified in bringing this venue war to a conclusion, as desirable as closure would be, without providing the plaintiffs with the opportunity for complete discovery and development of the facts and further fact finding by a circuit judge concerning General Motors' actual design decision-making process.

If evidence developed on further discovery were to show, and the judge were to find, that the Product Policy Group or other high level management are meaningfully involved in the design decision, a part of the cause of action may have arisen in Detroit.

The difference between analyzing a problem, and developing a recommendation for its resolution, on the one hand, and choosing between alternative resolutions, on the other hand, is one that the members of this Court deal with on a daily basis. The commissioner's staff, located in the Business and Trade Center Building, reviews applications for leave to appeal, reports to the Court concern-

ing the nature of the problem, and recommends, not infrequently, alternative resolutions. The justices review the commissioners' reports in their offices and homes, and confer by telephone or during conference at the Court's seat in the Law Building in Lansing.

Although commissioner reports and recommendations are generated in the Business and Trade Center Building, decisions on applications for leave to appeal are not made in that building. They are made elsewhere, by the justices, at their offices, their homes, or during telephone or formal conference discussion at the Law Building. Although the justices and the Court often adopt commissioner recommendations without holding them for conference discussion, the decisions in those cases are not made in the Business and Trade Center Building simply because work was done and a report and recommendation were there generated.

Similarly, in the instant cases, it may be that the Product Policy Group or another executive management committee or persons located in the World Headquarters, including persons located in Macomb County who report to persons located in Detroit, make the most meaningful design decisions when they decide which designs to adopt and which to reject. The record is not sufficiently developed for this Court to rule, as a matter of law, that design decisions invariably occurred in Macomb County.

I would remand to the circuit courts for further proceedings on the venue issue.

I also disagree with the majority's disposition of Gross' alternative argument that venue was properly transferred on grounds of hardship or inconvenience by the Washtenaw Circuit Court to the Wayne Circuit Court pursuant to § 1629(1) of the

Revised Judicature Act[1] and MCR 2.222-2.224. The majority states that "[l]ike the Court of Appeals" it finds that the argument is "without merit."[2]

Before *Lorencz v Ford Motor Co,* 439 Mich 370; 483 NW2d 844 (1992), was decided, venue had been changed by the Wayne Circuit Court to Washtenaw, on the basis that venue was improper in Wayne. The Wayne Circuit Court ruled that the proper venue was Washtenaw. The Washtenaw Circuit Court—the "proper venue"—changed the venue back to Wayne "for purposes of convenience" as provided for in the statute.[3]

The Court of Appeals ruled on the first appeal to that Court that the Washtenaw Circuit Court "did not have authority to transfer the action to Wayne County for purposes of convenience,"[4] but remanded to the Wayne Circuit Court for reconsideration in light of *Lorencz* of General Motors' motion for a change of venue. On remand, the Wayne Circuit Court decided to retain jurisdiction, and the Court of Appeals, by order, affirmed, one judge dissenting.

I am inclined to disagree with the Court of Appeals, and to the view that the Washtenaw Circuit Court did not, because the case had been "improperly" commenced in Wayne, have less authority to change venue to Wayne "based on hardship or inconvenience" than it would have had if the case had been commenced in Washtenaw.[5]

---

[1] MCL 600.1629(1); MSA 27A.1629(1).

[2] *Ante,* p 161, n 8.

[3] Either party may file a motion for a change in venue based on hardship or inconvenience. Venue shall only be changed under this subsection to the county in which the moving party resides. [MCL 600.1629(2); MSA 27A.1629(2).]

[4] 199 Mich App 620, 624; 502 NW2d 365 (1993).

[5] The hierarchy of venue set forth in subsection (1) of § 1629, is expressly made subject to the power of the court to change venue on

The majority also errs in suggesting that Gross' alternative argument should not be heard because he failed to apply for leave to appeal the first decision of the Court of Appeals and failed to file a cross appeal from its second decision. A litigant is not required to file an application for an interlocutory appeal to this Court to preserve the right to seek review of an adverse decision by the Court of Appeals following a subsequent decision of the Court of Appeals.[6]

Nor is a litigant required to file a cross appeal to advance an alternative argument for affirming a decision of the Court of Appeals.[7] A cross appeal is required when a litigant asks this Court to change the decision of the Court of Appeals.

The Court of Appeals decided on the second appeal in *Gross* to affirm the decision of the

---

the basis of hardship or inconvenience. Subsection (1) of § 1629 provides: "Subject to subsection (2), in an action based on tort, the following provisions apply . . . ." There is there set forth the hierarchy, on which the majority opinion is predicated. Subsection (2), concerning change in venue "based on hardship or inconvenience," immediately follows, and is set forth in n 3.

[6] Compare *Raven v Wayne Co Bd of Comm'rs*, 399 Mich 585, 588, n 1; 250 NW2d 477 (1977), in which this Court had denied an application for interlocutory appeal, and it was asserted on the second appeal that the earlier decision had become the law of the case. This Court said:

> The remand for further proceedings prevented the judgment from becoming final. This is the first occasion this Court has had to consider on plenary review the conclusions and determinations of the Court of Appeals. We are not precluded by the earlier determination of the Court of Appeals from reaching a conclusion contrary to that expressed in its first opinion.

[7] An appellee not taking a cross-appeal may nevertheless urge in support of the judgment in his favor reasons other than those adopted by the lower court, or reasons rejected by the trial court. [7A Callaghan's Michigan Pleading & Practice (2d ed), § 57.54, p 334.]

See *Burns v Rodman*, 342 Mich 410, 414; 70 NW2d 793 (1955); *Fass v Highland Park*, 321 Mich 156, 158; 32 NW2d 175 (1948).

Wayne Circuit Court retaining jurisdiction, following the change back to Wayne ordered by the Washtenaw Circuit Court. Gross, who seeks affirmance of the decision of the Court of Appeals, was not required to file a cross appeal to preserve his right to seek review of the earlier decision of the Court of Appeals.

CAVANAGH and WEAVER, JJ., took no part in the decision of these cases.