**Lansing, Michigan**

# Opinion

Chief Justice:    Justices:
Marilyn Kelly    Michael F. Cavanagh
    Elizabeth A. Weaver
    Maura D. Corrigan
    Robert P. Young, Jr.
    Stephen J. Markman
    Diane M. Hathaway

FILED JULY 30, 2010

STATE OF MICHIGAN

SUPREME COURT

BRANDON BRIGHTWELL,

Plaintiff-Appellant,

v    No. 138920

FIFTH THIRD BANK OF MICHIGAN,

Defendant-Appellee.

SHARON CHAMPION,

Plaintiff-Appellant,

v    No. 138921

FIFTH THIRD BANK OF MICHIGAN,

Defendant-Appellee.

BEFORE THE ENTIRE BENCH

KELLY, C.J.

In these consolidated cases, we must determine the proper interpretation of the venue statute[1] in the Civil Rights Act (CRA).[2] Specifically, we are asked to decide whether venue was proper in Wayne County under MCL 37.2801(2).

Plaintiffs filed their suits in Wayne County, alleging that defendant terminated their employment in violation of the CRA. The Court of Appeals, relying on its decision in *Barnes v Int'l Business Machines Corp*,[3] concluded that venue was proper only in Oakland County, where defendant made the decisions to terminate plaintiffs' employment. Consequently, the Court of Appeals reversed the trial courts' orders denying defendant's motions to change venue to Oakland County.[4]

We disagree with the *Barnes* decision and overrule it.[5] In the cases before us, part of the alleged discrimination occurred in Wayne County, where plaintiffs worked and where the allegedly discriminatory actions were implemented. Therefore, we reverse the

---

[1] MCL 37.2801.

[2] MCL 37.2101 *et seq.*

[3] *Barnes v Int'l Business Machines Corp*, 212 Mich App 223; 537 NW2d 265 (1995).

[4] *Brightwell v Fifth Third Bank of Michigan*, unpublished opinion per curiam of the Court of Appeals, issued April 9, 2009 (Docket Nos. 280820 and 281005).

[5] In *Barnes*, the Court of Appeals did not explicitly limit venue to the place where the employment decisions were made. However, later panels of the Court have interpreted it that way. See, e.g., *Green v R J Reynolds Tobacco Co*, unpublished opinion per curiam of the Court of Appeals, issued May 26, 1998 (Docket No. 196355).

judgment of the Court of Appeals and remand these cases to the Wayne Circuit Court for further proceedings on plaintiffs' claims.

## FACTS AND PROCEDURAL HISTORY

Plaintiffs are African-Americans formerly employed by defendant. They worked for defendant at banking centers in Wayne County. On or around May 17, 2007, defendant terminated their employment for alleged misconduct. Plaintiff Sharon Champion learned of her dismissal through a telephone call from defendant's office in Oakland County to her home in Wayne County. The parties dispute where plaintiff Brandon Brightwell received notice of his dismissal.[6]

Plaintiffs filed separate lawsuits in Wayne County, each alleging that defendant had terminated their employment for reasons of racial discrimination in violation of the CRA.[7] Defendant moved in both lawsuits to change venue to Oakland County. It supported the motions with an affidavit from Michael Andrzejewski, an employee relations consultant who worked in defendant's Southfield regional office in Oakland County.

Andrzejewksi averred in his affidavit that he was personally involved in the final decisions to terminate plaintiffs' employment and that those decisions were made in the

---

[6] Brightwell claims that defendant communicated his termination to him at his place of employment in Wayne County. Defendant asserts that Brightwell received notification of his termination at his home in Oakland County. This factual dispute is irrelevant to our conclusion in this case.

[7] We do not discuss the merits of plaintiffs' CRA claims here because they are not before us.

Southfield regional office. Defendant claimed that because it made the decisions in Oakland County, venue was proper only there. Both trial courts declined to change venue. Defendant sought interlocutory appeals in both cases.

The Court of Appeals granted both applications for leave to appeal, consolidated the appeals, and reversed the trial courts' rulings in a divided decision. Relying on *Barnes*, the lead opinion concluded that "the appropriate venue for a CRA cause of action . . . depends on where the defendant's violation occurred, not where the plaintiff was injured."[8] It noted that "[t]his Court has held that the alleged violation of the CRA is the action which gives rise to liability under the act, i.e., the corporate decision affecting the plaintiff's employment."[9]

The Court of Appeals concurrence agreed that "venue is appropriate where the CRA was violated through the use of improper characteristics in making an employment decision."[10] It criticized the dissenting opinion's discussion of the statutory tort venue provision, MCL 600.1629, as interpreted in our decision in *Dimmett & Owens Financial, Inc v Deloitte & Touche (ISC), LLC*.[11]

The Court of Appeals dissent argued that the employment decisions constituted only a "potential violation" of the CRA and that it was the actual discharges that

[8] *Brightwell*, unpub op at 3 (opinion by BANDSTRA, J.).

[9] *Id.* at 2.

[10] *Id.* at 4 (TALBOT, P.J., concurring).

[11] *Dimmett & Owens Financial, Inc v Deloitte & Touche (ISC), LLC*, 481 Mich 618; 752 NW2d 37 (2008).

4

constituted the adverse employment actions.[12]  The dissent would have held that venue was proper in Wayne County.[13]  Plaintiffs sought review in this Court, and we granted their applications for leave to appeal.[14]

## ANALYSIS

An appellate court uses the clearly erroneous standard to review a trial court's ruling on a motion to change venue.[15]  Statutory interpretation involves questions of law that are reviewed de novo.[16]

The relevant statutory provision, MCL 37.2801, provides in part:

> (1) A person alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both.

> (2) An action commenced pursuant to subsection (1) may be brought in the circuit court for the county where the alleged violation occurred, or for the county where the person against whom the civil complaint is filed resides or has his principal place of business.

As always, our analysis begins with the language of the statute.[17]  The primary goal of statutory interpretation is to give effect to the intent of the Legislature as expressed in the statute.[18]

---

[12] *Brightwell*, unpub op at 3-4 (GLEICHER, J., dissenting).

[13] *Id.* at 5.

[14] *Brightwell v Fifth Third Bank of Michigan*, 485 Mich 902 (2009).

[15] *Shock Bros, Inc v Morbark Industries, Inc*, 411 Mich 696, 698-699; 311 NW2d 722 (1981).

[16] *People v Swafford*, 483 Mich 1, 7; 762 NW2d 902 (2009).

[17] *People v Davis*, 468 Mich 77, 79; 658 NW2d 800 (2003).

These cases involve only the first clause of subsection (2), which makes venue proper "in the circuit court for the county where the alleged violation occurred."[19] In *Barnes*, the Court of Appeals held, without citation or analysis, that the "violations alleged are adverse employment decisions" and that "the place of corporate decision making is an appropriate venue."[20] Judge WHITE concurred separately, opining that "[d]iscrimination also 'occurs' in the county where the decision is implemented and the discrimination is inflicted."[21] She rejected the majority's implication that "venue of a civil rights action is proper only in the county where the discriminatory decision is made."[22]

---

[18] *Brown v Detroit Mayor*, 478 Mich 589, 593; 734 NW2d 514 (2007).

[19] Defendant claims, and plaintiffs do not dispute, that it "resides" in Oakland County and that its principal place of business is in Kent County.

[20] *Id.* at 226-227 & n 3. We note that *Barnes* relied heavily on the policy rationale articulated in *Gross v Gen Motors Corp*, 448 Mich 147, 164; 528 NW2d 707 (1995), that one of the goals of venue provisions is to discourage forum-shopping. *Barnes*, 212 Mich App at 226. As a general matter, this statement is correct.

However, *Gross* interpreted the tort venue provision, MCL 600.1629, which was added as part of the tort reforms enacted in 1986. One of the Legislature's explicit goals was to reduce forum-shopping by plaintiffs. *Gross*, 448 Mich at 157-158. By contrast, MCL 37.2801 has not been amended since it was enacted as part of the CRA in 1976. Thus, we find wanting *Barnes*'s determination that *Gross*'s reasoning was applicable to discrimination cases. On the contrary, much more persuasive reasons exist to interpret the CRA venue provision as we do today.

[21] *Barnes*, 212 Mich App at 227 (WHITE, P.J., concurring) (citation omitted).

[22] *Id.*

The question of where venue properly lies for a lawsuit brought under the CRA turns on the meaning of the phrase "where the alleged violation occurred" found in MCL 37.2801(2). "Violation" is defined in part as "1. the act of violating or the state of being violated. 2. a breach or infringement, as of a law or promise."[23] Plaintiffs alleged that defendant violated MCL 37.2202(1), which provides in part:

> An employer shall not do any of the following:
>
> (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

A "violation" of MCL 37.2202, therefore, is equally dependent on an adverse employment action (in these cases the act of "discharg[ing]") and an improper motive for taking that action (a decision to discriminate "because of" a protected status). We believe it logically follows that a violation of the CRA "occur[s]" when the discriminatory decision is made and adverse employment actions are implemented.

Thus, we agree with Judge WHITE's concurrence in *Barnes*, which is also consistent with other courts' interpretations of similar venue provisions. The majority in *Barnes* erred by restricting what constitutes a violation of the CRA to "adverse employment decisions."[24] Relying heavily on *Barnes*, the Court of Appeals lead and concurring opinions here reached the same erroneous conclusion.

---

[23] *Random House Webster's College Dictionary* (2001).

[24] *Barnes*, 212 Mich App at 226.

We overrule *Barnes* because it restricted the analysis of a violation of the CRA to the adverse employment decision. *Barnes* is inconsistent with MCL 37.2202(1)(a) and the meaning of "violation" and "occurred" in MCL 37.2801.

However, this determination does not fully resolve the issue before us. A remaining question is: What specific actions constitute the unlawful discharge that establishes the CRA violation? Venue in these cases was clearly proper in Oakland County because it is undisputed that defendant resides in Oakland County. However, plaintiffs filed suit in Wayne County. The Court of Appeals determined that the trial courts erred by denying defendant's motions to change venue to Oakland County because venue did not properly lie in Wayne County. Therefore, we must determine whether a CRA violation occurred in Wayne County that would provide a basis for venue in that location as well.

Defendant asserts that, even if *Barnes* is overruled, venue is proper only in Oakland County because that is where defendant completed several actions necessary to effectuate each plaintiff's discharge. For example, it removed plaintiffs from its payroll system at its Oakland County office. Plaintiffs counter that the only action that was relevant was the communication of the discharge decisions to them.

We reject both parties' arguments. It would be arbitrary to consider any of the suggested actions entirely dispositive of where the CRA violation occurred. Discrimination claims often involve numerous actions concerning employers' practices. Moreover, often it is unclear where the actions occurred that the parties claim are dispositive. Indeed, these cases provide a good illustration of the problem. If the

8

location where the employment decision was communicated to a plaintiff is solely dispositive, a court must still determine where that decision was "communicated."[25]

Finally, under this approach, defendants could unilaterally control venue by completing administrative tasks related to terminating a plaintiff's employment in their choice of locales. Or they could order an employee to report to a location in the venue they desire and fire the employee there. We believe these are not results that the Legislature intended in enacting the CRA.[26]

We conclude that the adverse employment actions in these cases occurred where plaintiffs' place of employment was located.[27] That is where most relevant actions involving the employer-employee relationship occur. Moreover, it is the severing of the employment relationship that is the truly adverse employment action. This action

---

[25] For example, was the decision in Champion's case communicated in Oakland County, where the phone call to her was placed, or in Wayne County, where she received it? In Brightwell's case, this burden is potentially even greater, as the facts regarding where Brightwell was informed of his termination are in dispute.

[26] We are not alone in that belief. The Massachusetts Appeals Court has written: "[T]he place where the employee is notified of his discharge does not necessarily establish the place where the alleged unlawful discharge occurred. To hold otherwise would allow employers to circumvent [Mass Gen L ch 151B] by simply notifying employees of their discharge when they are not in the Commonwealth." *Cormier v Pezrow New England, Inc*, 51 Mass App 69, 73; 743 NE2d 390 (2001), quoted with approval in *Cormier v Pezrow New England, Inc*, 437 Mass 302, 305-306; 771 NE2d 158 (2002).

[27] Judge WHITE's concurrence in *Barnes* implied a similar approach. She rejected the plaintiff's claim that venue was proper in Wayne County because Wayne County "was not the locus of his employment . . . ." *Barnes*, 212 Mich App at 227 (WHITE, P.J., concurring).

happens when the employee is no longer entitled to enter his or her place of work and perform the responsibilities of employment.

As Judge WHITE observed, it is also at this point that the allegedly unlawful discharge is fully "implemented and the discrimination is inflicted."[28]  Applying that logic to these cases, we note that plaintiffs worked in Wayne County.  Because defendant's allegedly unlawful actions precluded plaintiffs from continuing to do so, the CRA violations occurred in Wayne County.[29]

The concurrence/dissent erroneously limits the occurrence of a violation solely to the place where a discriminatory decision is communicated to an employee.  In doing so, it attaches too much significance to where the disclosure of the allegedly discriminatory discharge occurs.  Indeed, the essence of the concurrence/dissent's conclusion is found in its statement that "it can only be the actual communication, which itself implements a discriminatory decision, that amounts to the actual 'discharge' . . . ."[30]  Our reaction to this assertion is to ask: Why is this inherently so?

The concurrence/dissent offers no persuasive analysis to support its conclusion that the CRA violation must occur where the discharge is communicated.  The right being

[28] *Id*.  "Implement" is defined in part as "to fulfill; carry out [or] to put into effect according to a definite plan or procedure." *Random House Webster's College Dictionary* (2001).  "Inflict" is defined in part as "1. to impose as something that must be borne or suffered: *to inflict punishment*.  2. to impose (anything unwelcome)." *Id.*

[29] Interpreting an almost identically worded statute, the Massachusetts Supreme Judicial Court similarly concluded that "an unlawful employment practice may occur where 'the core of the employment relationship' lies." *Cormier*, 437 Mass at 307.

[30] *Post* at ___ n ___.

violated under the CRA is not the right to be free from communication of adverse employment actions. Rather, it is the right to be free from actions that actually separate the employee from gainful employment for discriminatory reasons.[31] The justices joining the concurrence/dissent convey an incorrect interpretation of this opinion when they write "that scarcely one in a thousand people would believe that a person is not 'discharged' from employment at the moment an employer says to an employee: 'You're fired.'"[32] In a world where snappy soundbites often distort the facts, this statement fits well and has face appeal. In truth, we justices do not disagree that "You're fired" means "You are discharged from your employment." Rather, this case addresses a quite different question, which is: If you are fired, in what location are you entitled to bring suit?

---

[31] MCL 37.2102(1) makes this clear. It provides that

> [t]he opportunity to obtain employment, housing and other real estate, and the full and equal utilization of public accommodations, public service, and educational facilities without discrimination because of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status as prohibited by this act, is recognized and declared to be a civil right.

The CRA prohibits discrimination in a variety of employment decisions, so this right implicitly includes the right to retain employment free from discrimination based on a protected status.

Therefore, an interpretation of MCL 37.2801(2) resulting in an outcome such as the one posited in the concurrence/dissent's hypothetical example, *post* at ___ n ___, does indeed find support in the statutory language. The concurrence/dissent's argument on this point is essentially that our approach would lead to inappropriate venues. It is in effect a policy argument asserting that the concurrence/dissent's approach is a preferable one; it is not an argument that the statutory language provides greater support for its approach.

[32] *Post* at ___.

It is true that the *actus reus* and *mens rea* of a CRA violation converge when a defendant communicates a discriminatory decision to an employee. But while that convergence causes the CRA violation, it does not settle the issue of what constitutes discharging the employee: the communication of the discriminatory decision or removing the employee's right to work at his or her place of employment.[33]

Decisions from other jurisdictions involving similar statutes have generally taken a more nuanced approach in evaluating where an employment discrimination violation occurs.[34] Other jurisdictions have consistently analyzed similar statutory language as

---

[33] The concurrence/dissent correctly notes that the removal of an employee's right to work will usually occur simultaneously with the "the point of communication of a discriminatory decision . . . ." *Post* at ___ n ___. However, our fundamental disagreement is about *where* (not when) the discharge takes place. We hold that it occurs at the place of employment because the removal of the right to work *at the workplace* constitutes a discharge. By contrast, the concurrence/dissent would hold that the discharge occurs wherever the communication of that discharge is uttered and heard.

Thus, because the disagreement between the majority and the concurrence/dissent does not relate to the timing of when a discharge occurs, the concurrence/dissent misses the mark with several of its criticisms of our analysis. *Post* at ___, ___ & n ___, ___. This misunderstanding of our approach is particularly evident in the last sentence of the concurrence/dissent. We do not "interpret[] this state's civil rights laws in a way that prevents a putative plaintiff's claims from becoming actionable the moment a violation of the CRA occurs . . . ." *Post* at ___. The pertinent question and point of disagreement between this opinion and the concurrence/dissent is where, not when, the violation is actionable.

[34] *Pope-Payton v Realty Mgt Servs Inc*, 149 Md App 393, 395; 815 A2d 919 (2003) (interpreting a statute providing for venue in the county "in which the alleged discrimination took place"); *Cormier*, 437 Mass at 305 (interpreting a statute providing for venue in the county "in which the alleged unlawful practice occurred"); *Passantino v Johnson & Johnson Consumer Prods, Inc*, 212 F3d 493, 504 (CA 9, 2000) (interpreting a Title VII provision making venue proper "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed"); *Cox v Nat'l Football*

---

12

including "'the place where the decisions and actions concerning the employment practices occurred.'"[35] We believe that it is the severance of the employment relationship that constitutes the actual discharge, not the mere communication of an adverse employment decision.[36]

---

*League*, 1997 WL 619839; 1997 US Dist LEXIS 15307 (ND Ill, Sept 29, 1997) (same); *McDonald v American Federation of Musicians*, 308 F Supp 664 (ND Ill, 1970) (same).

Undoubtedly, as the concurrence/dissent observes, the venue provision in Title VII, 42 USC 2000e-5(f)(3), provides for venue in more locations than does MCL 37.2801(2). But that fact fails to undermine our interpretation of the statutory language. It is guesswork to conclude that "the Michigan Legislature declined to adopt comparable language when it crafted Michigan's CRA." *Post* at ___. The precursor of MCL 37.2801, enacted before Title VII, contained similar language allowing venue in "the county wherein the alleged unlawful discriminatory practice is alleged to have occurred . . . ." Former MCL 37.4, repealed by 1976 PA 453. One could just as easily surmise that the Legislature recycled that language when it crafted MCL 37.2801. Again, absent clear indications of the Legislature's intent, this is an exercise in futility.

Whether our construction of MCL 37.2801(2) would render some provisions of Title VII "redundant" or "surplusage," *post* at ___ n ___, is irrelevant. The language of the CRA venue provision, as illustrated by the concurrence/dissent, is quite different from that used in Title VII.

[35] *Cox*, 1997 WL 619839, at *2; 1997 US Dist LEXIS 15307, at *6, quoting *Hayes v RCA Serv Co*, 546 F Supp 661, 663 (D DC, 1982).

[36] The concurrence/dissent cites one case from the United States District Court for the Southern District of New York that supports its position, but ignores contrary authority from the same district. *Lucas v Pathfinder's Personnel, Inc*, 2002 WL 986641, *1; 2002 US Dist LEXIS 8529, *3 (SD NY, 2002) ("The allegation that the decision to terminate Plaintiff was made in New York City . . . is insufficient to establish a violation of the [New York City human rights law] where, as here, the impact of that decision occurred outside of New York City."); *Wahlstrom v Metro-North Commuter R Co*, 89 F Supp 2d 506, 527 (SD NY, 2000) (stating that courts in the southern district of New York "have held that the [New York City human rights law] only applies where the actual impact of the discriminatory conduct or decision is felt within the five boroughs, even if a discriminatory decision is made by an employer's New York City office"); *Duffy v Drake Beam Morin*, 1998 WL 252063, *12; 1998 US Dist LEXIS 7215, *35 (SD NY, 1998)

The concurrence/dissent's definition of "discharge" provides greater support for our interpretation.[37] To "relieve of obligation," "deprive of . . . employment," or "dismiss from service" involves many decisions and actions. One is the communication of the dismissal to the employee, which the concurrence/dissent concludes is the basis for a CRA violation. However, it is not the communication of the discharge that violates the CRA, it is the actual discharge of the employee from his or her employment. This act occurs where the employee works because the employer has discharged the employee by removing his or her ability to work in that location.

The concurrence/dissent's determination of when a CRA violation occurs leads it to assert that the doctrine of *expressio unius est exclusio alterius* undermines our conclusion.[38] However, this argument is premised on the concurrence/dissent's

("[E]ven if, as [the plaintiffs] claim, the decision to fire them was made by [Drake Beam Morin] at its headquarters in New York City, that fact, standing alone, is insufficient to establish a violation of the City Human Rights Law when the employees affected by that decision did not work in New York City.").

[37] See *post* at ___ n ___ ("'Discharge' is not defined in the statute, but is commonly defined, in relevant form, as 'to relieve of obligation, responsibility'; 'to relieve or deprive of office, employment, etc.; dismiss from service.'").

[38] We disagree that the canon of *expressio unius est exclusio alterius* applies for two reasons. First, MCL 37.2801(2) lists only locations related to the person against whom the civil complaint is filed and makes no mention of the person filing the complaint. Thus, only locations related to the defendant in a CRA action could properly be considered excluded by implication under this canon. The lack of any reference in MCL 37.2801(2) to the plaintiff, the person filing the CRA complaint, undermines the concurrence/dissent's application of the canon to this statute.

Second, as the United States Supreme Court has observed, proper application of the canon requires the "essential extrastatutory ingredient of an expression-exclusion demonstration, the series of terms from which an omission bespeaks a negative

erroneous construction of the term "discharge" and of the language "where the alleged violation occurred" in MCL 37.2801(2). Since the Legislature intended the interpretation we ascribe to the language, there was no reason to expressly include an employee's place of employment as an alternative basis for venue. Hence, if "where the alleged violation occurred" encompasses acts precluding an employee from continuing to work at his or her place of employment, why would additional language be necessary?

Moreover, the last portion of the provision furnishing a basis for venue in MCL 37.2801(2) is explicitly tied to locations over which the employer has exclusive control; specifically, it provides for proper venue in "the county where the person against whom the civil complaint is filed resides or has his principal place of business." Presumably, if the Legislature had also intended that "where the alleged violation occurred" be a place over which a defendant had full control, it would have said so.

The Legislature certainly could have provided venue in "the county where the person against whom the civil complaint is filed resides, has its principal place of business, or communicates the alleged violation to the employee." It did not do so. This omission suggests that the phrase "where the alleged violation occurred" was not

implication. The canon depends on identifying a series of two or more terms or things that should be understood to go hand in hand." *Chevron USA Inc v Echazabal*, 536 US 73, 80-81; 122 S Ct 2045; 153 L Ed 2d 82 (2002). Here, the provisions establishing venue where a defendant "resides" or has its "principal place of business" refer to fixed and readily ascertainable locations. By contrast, where "the alleged [CRA] violation occurred" is a more amorphous concept that does not go hand in hand with the others.

similarly meant to be limited to locations subject to a defendant's exclusive control.[39] In sum, there is no textual basis in the CRA for reading the language of MCL 37.2801(2) as the concurrence/dissent reads it.

Finally, our analysis avoids the arbitrariness of the approaches suggested by the parties and accepted by the concurrence/dissent. Employers and employees generally both have some influence in determining where an employment relationship is formulated. "Venue rules traditionally have served to ensure that proceedings are held in the most convenient forum,"[40] and it defies common sense to conclude that the county in which the employee actually worked for the employer would be an inconvenient forum for either party.

---

[39] It is irrelevant whether the concurrence/dissent "subscribe[s]" to the view that venue is limited to places over which defendant has exclusive control. *Post* at ___ n ___. The relevant point is that the concurrence/dissent's approach, equating communication of the discharge decision with the CRA violation, would place all the venue alternatives in MCL 37.2801(2) under defendant's exclusive control.

Consider the example of an employee who works for her employer exclusively in Wayne County. Under the concurrence/dissent's approach, venue for a discriminatory discharge case would not be proper in Wayne County if the employer invited her to lunch in Windsor, Canada to tell her she was discharged. Similarly, the employee might attend a work retreat in the Upper Peninsula at her employer's request and be informed there that she was discharged. The concurrence/dissent would find venue proper in the Upper Peninsula rather than in Wayne County, notwithstanding that the Upper Peninsula may have no other connection to either the employer or the employee.

Moreover, the "parallel venue provisions" found in MCL 600.1629 that the concurrence/dissent cites are inapposite to MCL 37.2801(2). MCL 600.1629(1)(b) merely refers to a plaintiff's residence or place of business as an alternative venue to be invoked if venue cannot be established under MCL 600.1629(1)(a). MCL 37.2801 contains no such alternative venue provision.

[40] *Gross*, 448 Mich at 155.

16

We again reject the dissent's assertion that our decision is policy driven and that our analysis is merely justification for a predetermined interpretation. In fact, our decision is reasonably derived from the language of the statute. This decision invokes at least the following exercises in statutory interpretation: (1) an attempt to reasonably comprehend the meaning of "violation," "occurred," and "discharge" in the CRA, (2) an attempt to reasonably comprehend the meaning of these terms in the context of MCL 37.2801(2) as a whole, (3) an attempt to assess where the *actus reus* and the *mens rea* of the statute converge, (4) an attempt to compare the language of MCL 37.2801(2) with that of its predecessor statute, (5) an assessment of the relevance of traditional maxims of statutory construction, in this case *expressio unius est exclusio alterius*, (6) an attempt to assess alternative meanings of the relevant statutory terms, including those adopted by the dissent, in light of the overall purposes of the statute, and (7) an attempt to compare and contrast the caselaw of other states construing similar language. That we additionally point out that our interpretation results in a considerably more convenient forum than that of the dissent does not detract from the focus of our interpretative approach.

## APPLICATION

Plaintiffs both worked for defendant in Wayne County. Because adverse employment actions—the severance of plaintiffs' employment relationships—took place in Wayne County, the CRA violations occurred in Wayne County. Thus, venue properly lay in Wayne County under MCL 37.2801(2). Therefore, the Court of Appeals incorrectly held that the trial courts clearly erred by denying defendant's motion to change venue to Oakland County.

CONCLUSION

We conclude that, under MCL 37.2801(2), a violation of the CRA occurs when the alleged discriminatory decision is made and the allegedly adverse employment actions are implemented.  We overrule the Court of Appeals' decision in *Barnes v Int'l Business Machines Corp* to the extent that it held otherwise.

We further conclude that the CRA violation in a case alleging discharge from employment is the severance of the employment relationship.  The decisions and actions constituting that violation are implemented, and therefore occur, when the employee is no longer entitled to enter the workplace and perform the responsibilities of employment.

In these cases, each plaintiff's employment relationship with defendant was based and severed in Wayne County.  Thus, defendant's alleged violations of the CRA occurred in Wayne County.  Accordingly, we reverse the judgment of the Court of Appeals and remand these cases to the Wayne Circuit Court for further proceedings there on plaintiffs' claims.

CAVANAGH, MARKMAN, and HATHAWAY, JJ., concurred with KELLY, C.J.

18

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

BRANDON BRIGHTWELL,

      Plaintiff-Appellant,

v                                                                                  No. 138920

FIFTH THIRD BANK OF MICHIGAN,

      Defendant-Appellee.

_____

SHARON CHAMPION,

      Plaintiff-Appellant,

v                                                                                  No. 138921

FIFTH THIRD BANK OF MICHIGAN,

      Defendant-Appellee.

_____

YOUNG, J. (*concurring in part and dissenting in part*).

I concur with the majority to the extent that it reverses the judgment of the Court of Appeals and instead holds that venue is proper under the Civil Rights Act (CRA) in the places where the allegedly discriminatory decision was made *and* implemented. I dissent, however, from the majority's analysis regarding *when* this implementation occurs. In order to justify its interpretation that venue is always proper at an employee's place of work, the majority holds that a violation of the CRA has not occurred at the moment when an employer communicates a discriminatory employment decision to an

employee. This conclusion is contrary to the basic principle that the CRA violation occurs with the convergence of a prohibited act and a discriminatory intent. In light of that principle, I believe that the communication of the discriminatory decision *is itself* the CRA violation. Thus, once an adverse employment action is actually communicated, a violation has occurred and the plaintiff's claim becomes actionable, thereby making venue proper under the plain language of the CRA only in those places where the violation occurred. I also dissent from the majority's related holding that where an employee physically works provides an independently proper place of venue, even when a violation of the CRA did not occur in that location. While the location of employment may present a convenient or logical forum, because it is not necessarily where a statutory violation occurs for the purposes of the CRA's venue provision, I dissent from the portion of the majority's opinion manufacturing it as a proper venue.

ANALYSIS

The venue provision within the CRA provides, in relevant part: "An action commenced pursuant to [MCL 37.2801(1)] may be brought in the circuit court for the county *where the alleged violation occurred*, or for the county where the person against whom the civil complaint is filed resides or has his principal place of business."[1] The CRA itself describes what constitutes a violation. It provides, among other things, that an

---

[1] MCL 37.2801(2) (emphasis added). The word "occur" is defined as "to happen; take place; come to pass." *Random House Webster's College Dictionary* (2001).

employer shall not "[f]ail or refuse to hire or recruit, *discharge*, or otherwise discriminate against an individual with respect to employment . . . because of . . . race . . . ."[2]

Our interpretation of this statute is governed by clear and uncontroversial rules of statutory construction. "In interpreting statutory language, this Court's primary goal is to give effect to the Legislature's intent. If the Legislature has clearly expressed its intent in the language of the statute, that statute must be enforced as written, free of any 'contrary judicial gloss.'"[3] In doing so, "[w]e first review the language of the statute itself. If it is clear, no further analysis is necessary or allowed to expand what the Legislature clearly intended to cover."[4]

The language of the CRA clearly requires that a defendant commit an *actus reus* (an adverse employment action, such as a "discharge") with a specific *mens rea* (a discriminatory intent) in order to violate its provisions. Moreover, a violation of the CRA only occurs when an improper discriminatory intent is *actually communicated* within the

---

[2] MCL 37.2202(1)(a). "Discharge" is not defined in the statute, but is commonly defined, in relevant form, as "to relieve of obligation, responsibility"; "to relieve or deprive of office, employment, etc.; dismiss from service." *Random House Webster's College Dictionary* (2001).

[3] *Dep't of Agriculture v Appletree Mktg, LLC*, 485 Mich 1, 8; 779 NW2d 237 (2010) (citation omitted).

[4] *Miller v Mercy Mem Hosp*, 466 Mich 196, 201; 644 NW2d 730 (2002). Similarly, this Court has held that "a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

context of the adverse employment action.[5] Stated otherwise, for venue purposes, I believe that a violation occurs under the statute *only* at the time and in the place or places where the *actus reus* and the *mens rea converge*: where the defendant *implements* the discriminatory adverse employment action.[6]

The majority disagrees with this straightforward understanding and application of the CRA's venue provision, although it cannot explain why the convergence of the *mens rea* and *actus reus* does not equate with a statutory violation—here, two discharges. The majority confusingly explains that "it is not the communication of the discharge that violates the CRA, it is the actual discharge of the employee from his or her

---

[5] This communication is an obvious and necessary element of the statutory violation and singularly demonstrates why the line of decisions from the Court of Appeals holding that a violation occurs only at the place where the employer makes a discriminatory decision (and thus forms the discriminatory intent) was in error. See *Barnes v Int'l Business Machines Corp*, 212 Mich App 223, 226; 537 NW2d 265 (1995). The making of the discriminatory decision represents only the *mens rea* element of a CRA violation, while the communication or other implementation provides the necessary *act* depriving an employee of his job, which completes the statutory violation.

[6] Because of modern technologies, a violation may occur simultaneously in multiple locations, as this case demonstrates. Plaintiff Sharon Champion alleged just such a simultaneous violation in multiple locations in the instant case: defendant fired Champion via telephone; at the time, defendant was in Oakland County, while Champion was in Wayne County. I note, however, that these multiple locations are explicitly related to the *communication, and thus implementation,* of the discriminatory discharge, which is itself the violation of the statute. Regarding plaintiff Brandon Brightwell, though, there is a factual dispute about his location when defendant communicated the adverse employment decision to him. If, as defendant says is the case, Brightwell was at home in Oakland County and the phone call terminating his employment was also placed from Oakland County, then the statutory violation occurred completely in Oakland County, irrespective of the fact that Brightwell worked in Wayne County.

4

employment."[7] Yet when an employer fires an employee for a discriminatory purpose, as was alleged here, why is the communication of that adverse employment decision not *itself* the violation of the CRA?

I think that scarcely one in a thousand people would believe that a person is not "discharged" from employment at the moment an employer says to the employee: "You're fired." Yet in the context of discriminatory discharges under the CRA, the majority holds otherwise. The majority thus believes that the communication or implementation of a discriminatory decision only causes a *future* violation of the CRA at some later, indeterminate time (when an employee is actually prevented from returning to the workplace or performing his work duties) and is not itself the actual violation of the CRA. I fail to see how this can be true. An employer who tells an employee that he is fired *actually* severs the employment relationship at that time; if he also communicates a discriminatory intent to the employee at this time, he has violated the CRA. Such a convergence is more than a mere discriminatory statement devoid of meaning or

---

[7] *Ante* at ___. This analysis is made even more confusing by the majority's admission that "the *actus reus* and *mens rea* constituting a CRA violation converge when a defendant communicates a discriminatory decision to an employee" and that this "convergence causes the CRA violation . . . ." *This accepts precisely my stated formulation.* However the majority then states that "it does not settle the issue of what constitutes discharging the employee: the communication of the discriminatory decision or removing the employee's right to work at his or her place of employment." *Ante* at ___. I fail to see why not. If, as the majority *admits*, the convergence causes a violation at the time of convergence and the statute specifically and plainly defines "violation" as a "discharge," then the issue is settled: the discharge/violation occur at the point of communication of a discriminatory decision, which by definition, is *also* the same time as the employee's right to work has been removed.

5

consequence until some later time. The majority fails to understand that the issue of *when* a person is fired is inextricably linked to *where* the person is fired, given that the location(s) at the time the discharge occurs establish the statutory venue.[8]

The majority's analysis on this point is also internally inconsistent. If the communication terminating employment only caused a later violation that occurred at the employee's place of work, then *only* the *place of employment* could ever be the locus of the violation that establishes venue under the CRA. However, the majority opinion also holds that a violation may occur elsewhere at some place other than the place of employment. Under the majority's theory, why would the place where the communication is received, if it is not the place of actual employment, *ever* be a proper venue if it were not the place where the *actus reus* and *mens rea* converge to cause the violation? The majority cannot explain this anomaly.

Similarly, the majority opinion additionally provides that the "adverse employment actions in these cases occurred where the plaintiffs' place of employment was located"[9]—that is, where plaintiffs physically worked. It is difficult to see how the majority's "place of employment" theory of violation relates in any relevant way to the

---

[8] See *ante* at ___ & ___ n ___. It is this failure that allows the majority simply to assert that this opinion's criticisms "miss[] the mark" rather than address the substance of those criticisms.

[9] *Ante* at ___.

6

occurrence of the *actual discharge*.[10] In effect, the majority's analysis establishes as a matter of law that venue is proper not only where the discriminatory communication terminating the employment occurred, but also where the "effects" of the discrimination occurred, namely at an employee's place of work.[11]

The majority's position is further undermined by the fact that the CRA explicitly makes the *defendant's* place of business a proper venue, while at the same time it says nothing about plaintiff's place of employment. The CRA's venue provision provides that a CRA action "may be brought in the circuit court for the county where . . . the person

[10] I agree with the majority that it is the *severance* of employment that amounts to a discriminatory discharge. *Ante* at ___. The CRA's venue provision only allows proper venue where the actual severance occurred, though, which need *not* necessarily be in the place where the employee worked.

To advance its argument, the majority erroneously relies on this dissent's definition of "discharge," which again is commonly defined as "to relieve of obligation, responsibility"; "to relieve or deprive of office, employment, etc.; dismiss from service." *Ante* at ___ & n ___. For our purposes, the relevant words here are the verbs "relieve," "deprive," and "dismiss" because they add context to the statutory verb "discharge," which is the prohibited *act* relevant here. Thus, it can only be the actual communication, which itself implements a discriminatory decision, that amounts to the actual "discharge" or relieving of, depriving of, or dismissing from employment. And, again, this *act* need not occur at the place of actual employment. Since, it is the very *act* of communicating a discriminatory discharge that constitutes a violation of the CRA, if that communication or implementation is not made at the workplace, then the workplace is not a proper venue for a CRA action.

[11] Cf. *Rylott-Rooney v Alitalia-Linee Aeree Italiane-Societa Per Azioni*, 549 F Supp 2d 549, 554 (SD NY, 2008) (applying New York City's and New York State's human rights laws and making the distinction that "when an employee is terminated in a location other than his workplace, the act of termination is the original tortious act . . . and the experience of being removed from employment is the original event causing injury," only the latter of "which occurs at the employee's workplace"). Notably, unlike New York City's and New York State's laws, Michigan's CRA provision provides venue *only* in the place of the original tortious act, *and not* in the place of injury.

7

against whom the civil complaint is filed resides or has his principal place of business."[12]

This language underscores the fact that the majority essentially creates a new venue provision that is contrary or in addition to the statutory language regarding where a violation occurs, as well as the structure and specific language chosen by the Legislature.[13]

If the Legislature had wished to make a plaintiff's place of employment a proper venue, it could have easily and explicitly done so.[14] Indeed, if the Legislature wishes to

---

[12] MCL 37.2801(2). Because plaintiffs asserted that venue was proper in Wayne County, a place where defendant neither resides nor has its principal place of business, this portion of the CRA's venue provision was not relevant to venue for this action, which instead turned on whether a violation of the CRA had occurred in Wayne County. However, this language is instructive for our purposes in determining how to interpret the disputed language relevant here.

Additionally, I do not subscribe, as the majority curiously implies, to the view that venue is limited to the places over which defendant has exclusive control. See *ante* at ___. This is an altogether odd argument that, to the best of my knowledge, has not been advanced by any party or justice, and certainly not by me, as such a construction would be contrary to the language of the statute. Indeed, my construction of the statute permits what the wording explicitly provides: venue is proper in the place of the violation (here, a discharge), regardless under whose control that place falls. Accordingly, venue exists where the Legislature has stated that venue should exist, and "our judicial role 'precludes imposing different policy choices than those selected by the Legislature . . . .'" *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 759; 641 NW2d 567 (2002), quoting *People v Sobczak-Obetts,* 463 Mich 687, 694; 625 NW2d 764 (2001).

[13] General rules of statutory construction support this position. "Michigan has recognized the principal of *expressio unius est exclusio alterious* [sic]—express mention in a statute of one thing implies the exclusion of other similar things." *Stowers v Wolodzko*, 386 Mich 119, 133; 191 NW2d 355 (1971), citing *Dave's Place, Inc v Liquor Control Comm*, 277 Mich 551; 269 NW 594 (1936), and *Sebewaing Indus, Inc v Village of Sebewaing*, 337 Mich 530; 60 NW2d 444 (1953).

[14] The majority contends that "*since* the Legislature intended the interpretation we ascribe to the language [regarding the terms 'discharge' and 'violation'], there was no

---

8

establish parallel venue provisions, it is capable of doing and has done so.[15] However, when the Legislature has not done so, this Court may not expand upon the clear language chosen by the Legislature. Simply put, the CRA's venue provision says nothing about the plaintiff's place or locus of employment as an independent site of proper venue.

That the majority is expanding the scope of the CRA is further underscored when considering potential violations that are *not* discriminatory *discharges*, but are nonetheless CRA violations that will therefore be implicated by this decision. As previously noted, the CRA prohibits discriminatory "fail[ures] or refus[als] to hire or recruit" and other unnamed types of general employment discrimination against a person.[16] Under the majority's formulation, venue would be proper in a plaintiff's place of *potential* employment even if the plaintiff *never worked* in that place because of a refusal to hire.[17] By way of contrast, my interpretation of the venue provision

---

reason to expressly include an employee's place of employment as an alternative basis for venue." *Ante* at ___ (emphasis added). There is no indication, however, that the Legislature intended the majority's broad construction that interprets "violation" as something other than where the *actus reus* and *mens rea* come together. Moreover, if the Legislature intended to give those terms the meanings I have fairly ascribed to them, it *would* have needed to include additional language regarding the plaintiff's place of employment as an additional venue. Thus, the majority's assertion in this regard only advances its argument if one accepts its underlying premise that an overly broad reading of the statutory terms is required.

[15] See, e.g., MCL 600.1629. Michigan's general venue provision for torts explicitly makes distinctions between where the plaintiff and defendant reside in its framework establishing where venue is proper.

[16] MCL 37.2202(1).

[17] Consider, for example, a hypothetical case analogous to the facts here: a large corporation with its principal place of business in Oakland County recruits a student who

9

appropriately prevents venue from being established in such a location because neither the *actus reus* nor the *mens rea*—which together comprise a violation—would occur in that place. Moreover, whereas Title VII of the federal Civil Rights Act explicitly contemplates such a result,[18] the Michigan Legislature declined to adopt comparable language when it crafted Michigan's CRA.[19] Thus, the majority's construction ascribes additional meaning to the words of Michigan's CRA not contemplated by the Legislature.

---

also lives in Oakland County for a position in Detroit (Wayne County), yet discriminatorily refuses to hire the student for the Detroit position in violation of the CRA. Even though the student never set foot or worked in Wayne County, venue would nonetheless be proper in Wayne County under the majority's theory that Detroit would have been the place of employment and thus the employer "remov[ed] the [potential] employee's right to work at his or her [never-established] place of employment." *Ante* at ___. Such a construction finds no support in the language of Michigan's CRA venue provision.

[18] See 42 USC 2000e-5(f)(3) ("Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed . . . or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice . . . .") (emphasis added). If one were to adopt the majority's reasoning when interpreting this federal venue provision, the resulting construction would either render these alternative clauses redundant or render the latter clause surplusage because under the first clause, venue would always be proper in the place of potential employment.

[19] The Missouri Supreme Court has come to a similar conclusion. See *Igoe v Dep't of Labor and Indus Relations*, 152 SW3d 284, 288-289 (Mo, 2005). Using language that is nearly identical to Michigan's CRA, the venue provision of Missouri's Human Rights Act provides venue where the "unlawful discriminatory practice is alleged to have occurred." The Missouri Supreme Court held that vacant positions in St. Louis to which plaintiff had applied did not establish St. Louis as a proper venue because "all of the acts—the receipt and review of applications, the interviews, and the decision making—all occurred" in a separate county and thus no discriminatory practice had occurred in St. Louis. *Id.* at 288. Most important, this was true notwithstanding the fact that venue would have been proper in St. Louis under the federal venue provision of Title VII.

Finally, the majority notes several policy considerations supporting its position, but I believe that each is unavailing to displace the clear language of the statute. The majority argues that its additional rule creates another convenient forum and that it also prevents an employer from controlling the place of venue by choosing where he fires an employee. First, the resort to "convenience" as a justification for the rule in this case conflates forum non conveniens theory with the statutory venue provision.[20] They are not based on similar principles—the latter being predicated on where the forum is *proper*, not convenient. Additionally, even if a defendant tries to control venue by firing the plaintiff from a place wholly unrelated to the actual place of employment, the plaintiff's remedy at *that* time is a motion for a change of venue based on forum non conveniens.[21] It is not

---

[20] The majority opinion states that "it defies common sense to conclude that the county in which the employee actually worked for the employer would be an inconvenient forum for either party." *Ante* at ___. The *convenience* of the forum is not at issue in this case. Moreover, when a statute makes clear where venue is proper, I am not sure why any argument that meets the low threshold of being "common sense" can vary this statutory determination. I believe that the Legislature's choice makes "sense"— even if the majority would prefer another or an additional choice.

[21] This is the precise response and remedy to the hypothetical example posed in the majority opinion regarding an employer who fires a Wayne County employee while on retreat in the Upper Peninsula. See *ante* at ___ n ___. Indeed, the majority's hypothetical only reaffirms and *proves* my criticism that the majority improperly conflates forum non conveniens theory with venue rules. Similarly, the majority's alternative hypothetical example regarding an employee who is fired while at lunch in Canada again does nothing to disprove the reality that a statutory violation occurs when the *mens rea* and *actus reus* converge. In such a case, the CRA venue provision provides *alternative* venues to ensure that the plaintiff would have *a* Michigan forum in which to litigate his claim. See MCL 37.2801(2). And again, this forum may be relocated if it is determined to be inconvenient pursuant to forum non conveniens theory.

11

this Court's duty to manufacture alternative forums as a matter of law merely because they would *also* be convenient to the parties.

For these reasons, I would restrict venue solely to the place of the violation, as defined by where the *mens rea* and *actus reus* converge, in accordance with the clear terms of the statute. To the extent that the majority interprets this state's civil rights laws in a way that prevents a putative plaintiff's claims from becoming actionable the moment a violation of the CRA occurs, I dissent.

CORRIGAN, J., concurred with YOUNG, J.

---

Moreover, the mere fact that one can conceive of an exceptional hypothetical case does not mean that we should rewrite the general rule contrary to the plain meaning of the statute. I note that most cases will likely not implicate the distinction drawn between these opinions because many, if not most, employment violations occur at a person's place of employment. Thus, my interpretation of the venue provision does *not* lead to a situation that is contrary to common sense, that would deprive the parties of a convenient forum, or that will work a hardship against prosecuting potential CRA violations.

12

S T A T E   O F   M I C H I G A N

SUPREME COURT

BRANDON BRIGHTWELL,

        Plaintiff-Appellant,

v                                                 No. 138920

FIFTH THIRD BANK OF MICHIGAN,

        Defendant-Appellee.

_____

SHARON CHAMPION,

        Plaintiff-Appellant,

v                                                 No. 138921

FIFTH THIRD BANK OF MICHIGAN,

        Defendant-Appellee.

_____

WEAVER, J. (*dissenting*)

     I dissent. I would not have granted leave to appeal in this case because I am not persuaded that the Court of Appeals erred or that there was any material injustice.

                                      Elizabeth A. Weaver