*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DALZELL, Minors.

UNPUBLISHED
April 17, 2025
8:45 AM

No. 371818
Benzie Circuit Court
Family Division
LC No. 21-003137-NA

Before: GADOLA, C.J., and WALLACE and ACKERMAN, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her minor children, AD and ND, under MCL 712A.19b(3)(c)(*i*). We vacate the trial court's order and remand for further proceedings.

## I. FACTS

In April 2021, petitioner, the Department of Health and Human Services (DHHS), filed a petition in Benzie County to remove respondent's children, AD and ND, then ages four and three, from her care. The day before, Child Protective Services (CPS) workers discovered that respondent had left the children in Grand Traverse County at the home of the father and brother of the children's biological father, both of whom were registered sex offenders. The CPS workers also discovered electronic devices belonging to the two registered sex offenders containing inappropriate and pornographic pictures of the children. The petition additionally alleged that the unsanitary condition of the home was dangerous for the children; the CPS workers saw the children eating spoiled food from the floor, which was littered with spilled medication and debris.

The family had been the subject of a CPS investigation in 2018 in Grand Traverse County. At that time, respondent was provided with reunification services, and the children were returned to her care with a safety plan in place that prohibited respondent from leaving the children in the care of the relatives with sex offender status. A similar safety plan again was put in place in January 2021. On the day that the CPS workers found the children in the home in Grand Traverse County, the whereabouts of respondent, the children's legal father, and the children's biological father were unknown, and respondent allegedly was suffering from substance abuse and a severe

-1-

mental health breakdown. The CPS workers transported the children to a temporary placement with a relative in Benzie County.

An emergency hearing on the petition was held the following day, after which the trial court ordered the children removed from respondent's care and placed under petitioner's supervision. When foster care workers attempted to retrieve the children from the relative's home, however, they learned that respondent and the children's biological father had fled with the children. Police found the children in a vehicle with respondent and the biological father on a remote road in Benzie County. Petitioner filed an amended petition to remove the children from respondent's care. Thereafter, the trial court sought to transfer the case to Grand Traverse County, which rejected the transfer on the basis that respondent resided in Benzie County.

Initially, after the children were removed from respondent's care in April 2021, petitioner was unable to locate respondent. Respondent appeared for the bench trial in September 2021, however, and pleaded no contest to the allegations of the petition. Respondent testified that she was homeless and living in a tent. The trial court assumed jurisdiction of the children.

For the next approximately three years, petitioner provided respondent services with the goal of reunifying her with the children. After a hearing in November 2021, the trial court entered an order of disposition confirming the parties' service plan with the goal of reunification. In accordance with the service plan, petitioner thereafter provided respondent with supervised parenting time, assistance with housing, parenting classes, and mental health referrals. Respondent participated in Narcotics Anonymous and consistently screened negative for substances, but her participation in mental health services was sporadic.

In December 2022, respondent was evaluated by psychologist Eric Harvey, PhD., who diagnosed respondent with "unspecified schizophrenia and unspecified personality [disorder] with anti-social behaviors," as well as anxiety and depression. Harvey recommended that respondent be evaluated by a medical professional who could prescribe antipsychotic medication, and also recommended regular therapy tailored to long-term substance abuse.

During this period, respondent did not have housing and was staying with a boyfriend in a camp trailer without running water. Nonetheless, respondent was attending visits with the children regularly, tested negative for substances, and was employed. However, the children's foster mother reported that after parenting time with respondent, the children had negative behaviors.

During a dispositional hearing in July 2023, the foster care worker informed the trial court regarding Harvey's diagnosis of respondent. Although respondent had requested a new therapist, the foster care worker had not yet referred respondent to a therapist who could provide a dual diagnosis regarding both a mental health disorder and a substance abuse disorder. The foster care worker also acknowledged that he had not received progress notes from respondent's therapist. The foster care worker agreed that respondent was cooperating with her mental health plan. During this reporting period, respondent had tested negative for substances, had met with her therapist, had completed an online parenting class and a supportive visitation program, and had done well during parenting time. The foster care worker, however, recommended that the goal be changed to adoption because respondent was not taking antipsychotic medication; the foster care worker

agreed, however, that no medication had been prescribed, and that the foster care worker had not referred respondent to a psychiatrist for evaluation.

In September 2023, respondent was evaluated by Amanda Herrick, a licensed professional counselor and limited license psychologist, who diagnosed respondent with "stimulant use disorder in sustained remission," but with no symptoms of schizophrenia. The psychologist recommended that respondent undergo further medical evaluation to determine if her long-term use of methamphetamine had resulted in brain damage or other health changes.

In October 2023, respondent still was homeless and, according to petitioner, had failed to address her mental health issues. Petitioner sought to file a petition for termination of respondent's parental rights based on respondent's lack of progress treating her mental illness. The trial court authorized petitioner to petition for termination of respondent's parental rights.

At the time of the termination hearing in July 2024, the children were ages eight and seven. Psychologist Eric Harvey testified that he evaluated respondent in December 2022, and that respondent had reported symptoms of anxiety and depression, as well as auditory phenomena consistent with a thought disorder. Harvey concluded that respondent had persistent depressive disorder, unspecified schizophrenia, and unspecified personality disorder. He further testified that schizophrenia is always treated with antipsychotic medications. Harvey recommended that respondent be evaluated by a psychiatrist and attend regular therapy tailored to long-term substance abuse.

Psychologist Amanda Herrick testified that she evaluated respondent in September 2023 and diagnosed her with "stimulant use disorder in sustained remission." Herrick testified that respondent did not present with any symptoms of schizophrenia or other related psychotic disorders, such as delusional statements. Herrick recommended that respondent continue to engage in mental health therapy, or undergo a full mental health workup to determine if other therapy was appropriate.

The foster care supervisor, Grant Miller, testified that throughout the case, the main barriers to reunification were respondent's substance abuse, mental health problems, and homelessness. At the time of the termination hearing, respondent had demonstrated sobriety by regularly testing negative for substances. She also had obtained housing suitable for herself and the children, had obtained employment, and had purchased a vehicle. Miller testified that respondent was attending NA, and had attended therapy sporadically, but recently had stopped attending counseling because she did not believe that she was benefitting from that service. Miller testified that respondent had completed parenting classes, visited regularly with the children, and that he had observed a bond between respondent and the children. Miller also testified, however, that during a parenting time session, respondent showed poor judgment by permitting AD to sit on the lap of a strange man.

Miller remained concerned about respondent's mental health, primarily because respondent was not taking antipsychotic medication and was not consistently attending counseling. Miller testified that he urged respondent to seek a prescription for antipsychotic medications and to attend substance abuse therapy. Miller agreed that he had not referred respondent to a psychiatrist, however, and thus the medications had not been prescribed for respondent. He testified that he urged her to follow Harvey's recommendation by seeking the medications from

her primary care physician. Miller testified that respondent informed him that she did not want to take the medication and would rather her children be adopted than take the medications. Miller conceded, however, that respondent thereafter followed the agency's recommendation and attended a doctor's appointment to obtain the recommended medication, but that the physician's assistant with whom she met declined to prescribe the medication. Miller testified that he did not refer respondent to any additional doctors to seek antipsychotic medication. Miller also conceded that although Harvey also recommended that respondent and the children attend family therapy, Miller did not refer respondent for that service.

Miller agreed that the only remaining barrier to reunification was respondent's mental health; respondent had removed all other barriers. Miller stated that petitioner had been unable to verify that respondent had overcome her mental health barrier. Miller conceded the he had not referred respondent to a therapist who could address both her past substance abuse and also her mental health, but opined that respondent had not benefitted from the counseling she attended.

The trial court found that respondent had failed to show progress in her mental health sufficient to remove that barrier to reunification. The trial court did not base its determination on whether respondent sought antipsychotic medication, but rather on respondent's failure consistently to attend and benefit from counseling and to participate in a substance abuse recovery program. The trial court reasoned:

> [Under MCL 712A.19b(3)(c)(*i*), the] conditions that existed, - and I – you've heard me say it, especially for the better part of the last two years, you know, it appears she's been able to remain substance-free, now she's got a home, she's got employment, those are key steps that she took in the right direction. However, the key is the mental health issue. And especially as to . . . Eric Harvey, PhD. He had a list of diagnoses, there were five of them in his . . . report. He addressed the long substance abuse history going back to the 6th Grade, chronic depression, borderline personality disorder, . . . unspecified schizophrenia, and his recommendations were that for the substance abuse, she really needed to do recovery – recovery programs because without it relapse potential is high. But he opined in expert form that he believed that she needed weekly, I'll call it psychological counseling or psychological therapy, and that . . . the record is replete with the Department from worker to worker trying to get the respondent mother to do the counseling . . . . And [respondent] has even admitted to stopping . . . the most recent counseling sessions. So, as to the mental health issue of this case, [respondent] has not substantially benefitted from services for what was potentially the biggest issue in this case as to her.

The trial court found that respondent's mental health remained a barrier to reunification and that termination was in the children's best interests. The trial court entered an order terminating respondent's parental rights under MCL 712A.19b(3)(c)(*i*). Respondent now appeals.

## II. DISCUSSION

### A. VENUE AND JURISDICTION

-4-

Respondent contends that under MCR 3.926(B), venue in this case was proper in Grand Traverse County, not Benzie County. Respondent argues that because venue was not proper in Benzie County, the trial court did not have jurisdiction to hear the case. We disagree.

Venue and jurisdiction are separate considerations. "Jurisdiction has two parts – subject matter and personal. Subject matter jurisdiction is the right of the court to exercise judicial power over a class of cases, not the particular case before it. Personal jurisdiction is the court's authority to make decisions which affect the parties' rights and liabilities." *Mol v Mol*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 371184); slip op at 4 (quotation marks and citation omitted). By contrast, venue refers to the county or territorial area within a state or district where a cause of action must be brought. *Grebner v Oakland Co Clerk*, 220 Mich App 513, 516; 560 NW2d 351 (1996). Traditionally, venue rules ensure that proceedings are held in the most convenient forum. *Id*., citing *Gross v General Motors Corp*, 448 Mich 147, 155; 528 NW2d 707 (1995). The relevant considerations of venue are the interests of the parties and witnesses, and minimizing the costs of litigation for the parties and the legal system. *Gross*, 448 Mich at 155-156. We review de novo whether a trial court has subject matter jurisdiction and personal jurisdiction, as well as whether venue was proper in the trial court. *In re Contempt of Pavlos-Hackney*, 343 Mich App 642, 667; 997 NW2d 511 (2022).

In Michigan, the family division of the circuit court has exclusive jurisdiction over cases involving juveniles as provided in the juvenile code, MCL 712A.1 *et seq*. See MCL 600.1021 and MCL 600.601(4). Relevant to child protective proceedings, MCL 712A.2(b) establishes "[j]urisdiction in proceedings concerning a juvenile under 18 years of age found within the county." MCR 3.926(A) provides that "a child is 'found within the county' in which the offense against the child occurred, in which the offense committed by the juvenile occurred, or in which the minor is physically present."

MCR 3.926 addresses both the transfer of jurisdiction and change of venue in child protective proceedings. MCR 3.926(B) provides, in relevant part:

> (B) When a minor is brought before the family division of the circuit court in a county other than that in which the minor resides, the court may request transfer of the case to the court in the county of residence before trial. The court shall not order transfer of the case until the court to which the case is to be transferred has granted the request to accept the transfer.
>
> (1) If both parents reside in the same county, or if the child resides in the county with a parent who has been awarded legal custody, a guardian, a legal custodian, or the child's sole legal parent, that county will be presumed to be the county of residence.

MCR 3.926(B) thus permits a court to request transfer of a case in the family division involving a minor to the court in the county where the minor resides. Relevant factors to be considered when determining the child's county of residence include the county of residence of the parents, whether the child has lived in the county and for how long, and "[a]ny other factor the court considers relevant." MCR 3.926(B)(2). With respect to change of venue, MCR 3.926(D) provides, in relevant part:

(D) The court, on motion by a party, may order a case to be heard before a court in another county;

(1) for the convenience of the parties and witnesses, provided that a judge of the other court agrees to hear the case; or

(2) when an impartial trial cannot be had where the case is pending.

Unlike subject matter jurisdiction, which cannot be waived,[1] a defect in venue may be waived. *In re Contempt of Pavlos-Hackney*, 343 Mich App at 667. Moreover, a defect in venue constitutes, at most, a mistake in the exercise of jurisdiction, rather than a lack of subject matter jurisdiction. *Id.* In this case, at the preliminary examination held May 3, 2021, the trial court suggested that venue was proper in Grand Traverse County, and asked the parties whether they agreed. Counsel for respondent stated that respondent would leave the issue of venue to the determination of the trial court. Respondent thereby waived any challenge to venue.

Respondent suggests that if venue was not proper in the trial court, the trial court also did not have jurisdiction in this case. We note that a challenge to subject matter jurisdiction may be raised at any time, even for the first time on appeal. *Bank v Mich Educ Ass'n-NEA*, 315 Mich App 496, 499; 892 NW2d 1 (2016). Respondent, however, does not appear to dispute that the family division of the circuit court has subject matter jurisdiction of a case brought under the juvenile code, MCL 712A.1 *et seq.*, such as this one. Respondent's argument, conflating to some extent principles of venue and jurisdiction, suggests that respondent is challenging not the trial court's subject matter jurisdiction, but instead the trial court's exercise of jurisdiction in this case, i.e., personal jurisdiction. However, personal jurisdiction, unlike subject matter jurisdiction, is subject to waiver. *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011). Here, respondent pleaded no contest to the allegations of the amended petition and did not challenge the adjudicatory process in an appeal from the trial court's initial order of disposition. MCR 3.971(B) therefore bars respondent from challenging the exercise of the trial court's personal jurisdiction over her in this appeal of the order terminating her parental rights. We conclude that just as respondent waived any challenge to venue, respondent waived any challenge to the trial court's exercise of its jurisdiction in this case.

## B. REASONABLE EFFORTS

Respondent also contends that the trial court erred by terminating her parental rights because petitioner failed to make reasonable efforts to preserve and reunify the family. We review for clear error the trial court's decision that the agency made reasonable efforts toward reunification, *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022), and review de novo the trial court's interpretation and application of a statute, *In re Sanders*, 495 Mich 394, 404; 852 NW2d 524 (2014).

---

[1] Waiver is the intentional relinquishment of a known right. *In re Ferranti*, 504 Mich 1, 33; 934 NW2d 610 (2019).

Generally, the DHHS must make reasonable efforts to reunify families before seeking to terminate parental rights. MCL 712A.19a(2); *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017). Absent aggravating circumstances, termination of parental rights is not appropriate unless reasonable efforts at reunification have been made. *In re MJC*, __ Mich App __, __; __ NW3d __ (2023) (Docket No. 365616); slip op at 3. To make reasonable efforts, the DHHS "must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks*, 500 Mich at 85-86. Although the DHHS must offer services as outlined in the service plan, the respondent has the responsibility to participate in and benefit from the offered services. *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). In addition, to demonstrate that the DHHS failed to make reasonable efforts to reunify the family, the respondent must establish that he or she would have fared better had other services been offered. *In re Sanborn*, 337 Mich App 252, 264; 976 NW2d 44 (2021).

In this case, the parties do not dispute that DHHS created a service plan for respondent. Respondent argues, however, that the services provided were not reasonable because they were not tailored to address adequately her mental illness. Specifically, respondent argues that petitioner failed to refer her to a psychiatrist who could prescribe antipsychotic medication. The record indicates that petitioner referred respondent for a medical appointment, but the physician's assistant who conducted the appointment was unwilling to prescribe antipsychotic medication, and the agency did not make another referral thereafter. Addditionally, the agency did not refer respondent to family therapy as recommended.

The most glaring deficit in the services provided, however, is the absence of a current evaluation of respondent's mental health before the termination hearing in July 2024. Respondent's parental rights were terminated on one basis only: that the conditions that led to adjudication continued to exist and that there was no reasonable likelihood that the conditions would be rectified within a reasonable time given the ages of the children. Petitioner contended, and the trial court agreed, that of the conditions that led to adjudication, only one condition remained that posed a barrier: respondent's mental health. Petitioner sought termination of respondent's parental rights largely based on the opinion of the psychologist who had evaluated respondent's mental health in December 2022, despite a more recent evaluation of respondent's mental health in September 2023 that reported that respondent was not demonstrating symptoms of schizophrenia. Petitioner's concern about respondent's mental health appears to have focused primarily upon respondent's reluctance to take antipsychotic medication, even though no doctor had prescribed such medication for respondent.

Although the trial court did not base its decision on respondent's reluctance to take antipsychotic medication, the trial court emphasized that respondent had not attended counseling regularly and recently had stopped attending counseling because she did not find it beneficial. Under the circumstances of this case, however, the lack of a current evaluation of respondent's mental health makes it difficult to conclude that respondent was in need of continued counseling. We observe that parental rights may be terminated if a parent is mentally ill, but not merely because a parent does not participate in counseling, unless it is demonstrated that the parent is in need of counseling to rectify a condition that is creating a barrier to reunification. In other words, the petitioner must establish that a particular barrier continues to exist before declaring that the parent's lack of participation in services to rectify that barrier is a basis for termination. For example, lack of adequate housing may be a barrier to reunification. But if a parent has rectified

that problem by obtaining adequate housing, the failure of that parent to participate in further housing services would not justify termination of parental rights.

We remand to the trial court to reconsider whether petitioner made reasonable efforts to assist respondent in overcoming her mental illness, as well as the necessary precursor of that inquiry, whether petitioner established that respondent still suffers from symptoms of mental illness necessitating mental health services.

The trial court's order is vacated and this matter is remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Randy J. Wallace
/s/ Matthew S. Ackerman